Edward J. PRESCOTT and Wanda D. Prescott, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

L. W. SIMPSON and Shirley Simpson, Appellees,

v.

UNITED STATES of America, Appellant.

Nos. 76–1634, 77–1084.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1977.

Decided Sept. 14, 1977.

A. H. Michals, Minneapolis, Minn., for appellants in No. 76–1634.

Jeffrey S. Blum, Atty., Tax Div., Dept. of Justice, Washington, D. C., Meade Whitaker, I. R. S., Washington, D. C., for appellee in No. 76–1634; Scott P. Crampton, Asst. Atty. Gen., and Gilbert E. Andrews and Robert A. Bernstein, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief.

Myron C. Baum, Acting Asst. Atty. Gen., and Gilbert E. Andrews, Jeffrey S. Blum and Robert A. Bernstein, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellant in No. 77–1084; and Paul A. Zoss, Jr., U. S. Atty. (former), Des Moines, Iowa, and James R. Rosenbaum, U. S. Atty. (present one), Des Moines, Iowa, on brief.

John H. Raife, Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, Iowa, for appellees in No. 77–1084; Richard A. Malm, Des Moines, Iowa, on brief.

Before LAY and WEBSTER, Circuit Judges, and REGAN, Senior District Judge*.

WEBSTER, Circuit Judge.

These two appeals, both of which turn on the validity of Treas.Reg. § 1.1361–16(b), have been consolidated for disposition in this Court.[1] In both cases, taxpayers chal-

---

* The Honorable John K. Regan, United States District Court for the Eastern District of Missouri, sitting by designation.

1. *Prescott v. Commissioner,* 66 T.C. 128, an appeal from the Tax Court of the United States, was submitted after oral argument on February 17, 1977.

*Simpson v. Commissioner of Internal Revenue,* 423 F.2d 720, an appeal from the United States District Court for the Southern District of Iowa, was submitted on the briefs of the parties on April 13, 1977.

lenge the action of the Internal Revenue Service in treating the termination of elections by § 1361 "corporations" as resulting in taxable liquidations.

Under 26 U.S.C. § 1361,[2] as enacted in 1954, a proprietor or partnership owning an unincorporated business enterprise could elect to be treated as a corporation for tax purposes. The election could be made within sixty days of the close of any taxable year; it was irrevocable. The petitioner in No. 76–1634, Edward J. Prescott, a Minnesota securities dealer, conducts business as a sole proprietorship under the name Edward J. Prescott & Co. He first elected to be taxed as a corporation under § 1361 for taxable year 1954. The appellee in No. 77–1084, L. W. Simpson, is sole proprietor of an Iowa trucking business known as the Mid-Seven Transportation Co. He first elected under § 1361 to be taxed as a corporation for taxable year 1960. During the years in which the elections were effective, both taxpayers reported income of their businesses as if they were corporations and paid taxes on that portion of their income at corporate rates.

Very few owners of unincorporated businesses availed themselves of the special treatment accorded by § 1361. Because of this, and the complexity of the problems in its administration, Congress repealed § 1361 in 1966.[3] No new elections were allowed after the date of passage of the repealer, April 14, 1966. 26 U.S.C. § 1361(a). Elections previously made could be voluntarily revoked. 26 U.S.C. § 1361(n)(1). Any election not voluntarily revoked would be automatically terminated on January 1, 1969. 26 U.S.C. § 1361(n)(2).

A taxpayer who transferred the assets of his proprietorship to a de jure corporation after revocation of the election could limit the income tax consequences of revocation. 26 U.S.C. § 1361(m); Treas.Reg. §§ 1.1361–16(a)(2), –16(b). However, in the absence of transfer to a corporation, "the section 1361 corporation and its owners [would] be treated as if the corporation had distributed

---

In each case, both husband and wife are parties because they filed joint returns for the years in question. We refer to each husband as "taxpayer" and the two husbands jointly as "taxpayers."

2. Title 26 U.S.C. § 1361 provided in pertinent part:

§ 1361. Unincorporated business enterprises electing to be taxed as domestic corporations.

(a) General rule.—

Subject to the qualifications in subsection (b), an election may be made, in accordance with regulations prescribed by the Secretary or his delegate, not later than 60 days after the close of any taxable year of a proprietorship or partnership owning an unincorporated business enterprise, by the proprietor or all the partners, owning an interest in such enterprise at any time on or after the first day of the first taxable year to which the election applies or of the year described in subsection (f), to be subject to the taxes described in subsection (h) as a domestic corporation for such year and subsequent years. *No election (other than an election referred to in subsection (f)) may be made under this subsection after the date of the enactment of this sentence.*

\* \* \* \* \* \*

(n) *Revocation and termination of elections.—*

(1) *Revocation.—*

An election under subsection (a) with respect to an unincorporated business enterprise may be revoked after the date of the enactment of this subsection by the proprietor of such enterprise or by all the partners owning an interest in such enterprise on the date on which the revocation is made. Such enterprise shall not be considered a domestic corporation for any period on or after the effective date of such revocation. A revocation under this paragraph shall be made in such manner as the Secretary or his delegate may prescribe by regulations.

(2) *Termination.—*

If a revocation under paragraph (1) of an election under subsection (a) with respect to any unincorporated business enterprise is not effective on or before December 31, 1968, such election shall terminate on January 1, 1969, and such enterprise shall not be considered a domestic corporation for any period on or after January 1, 1969. Section 1361 was repealed by Act of April 14, 1966, Pub.L. 89–398, § 4(b)(1), 80 Stat. 116; the repeal was effective January 1, 1969. The emphasized language was added as part of the repealing legislation.

3. *See* footnote 2, *supra.*

its assets in a complete liquidation on January 1, 1969." Treas.Reg. § 1.1361–16(b).[4] The complete liquidation of a corporation is treated by a taxpayer as payment in full in exchange for his stock. 26 U.S.C. § 331(a)(1). Income is realized on such a liquidation to the extent that the amount realized exceeds the taxpayer's adjusted basis in his shares. 26 U.S.C. § 1001 *et seq.*

In the two cases on appeal, neither Prescott nor Simpson voluntarily revoked his § 1361 election prior to January 1, 1969. The elections therefore terminated by operation of law on that date. Neither taxpayer incorporated his business; both reported income as proprietorships for 1969 and the following years. Of most significance, neither taxpayer reported a gain from liquidation for 1969, as required by Treas.Reg. § 1.1361–16(b).

The Commissioner assessed a $108,051.78 deficiency against Prescott for 1969 based on failure to report a gain from liquidation. Prescott petitioned the Tax Court for review, challenging the validity of that portion of § 1.1361–16(b) which requires corporate liquidation treatment on the termination of a § 1361 election. The Tax Court sustained the position of the Commissioner, finding that the regulation "is eminently reasonable and consistent with the legislative intent * * *." Prescott appeals.

The Commissioner assessed Simpson with deficiencies for 1969 and 1971 totaling $55,100.70, based on the failure to report a gain from liquidation. Simpson paid the assessments, and sued for refund in the United States District Court for the Southern District of Iowa. The Court found that the regulation was invalid for lack of authorization, inconsistency with the governing statute, unreasonableness, and improper retroactivity. The Court found that Simpson was therefore entitled to a refund; the United States appeals.

We conclude that the challenged regulation is valid. We therefore affirm the judgment of the Tax Court in No. 76–1634, and reverse the judgment of the District Court in No. 77–1084.

Taxpayers contend that § 1.1361–16(b) is an invalid interpretation of 26 U.S.C. § 1361, because it is inconsistent with the purpose of the statute, unauthorized, and unreasonable. Alternatively, they contend that the regulation unconstitutionally imposes an unapportioned direct tax on something other than income, and imposes a retroactive tax.

■ The burden of establishing the invalidity of the regulation lies with the taxpayers. *See Dixon v. United States,* 381 U.S. 68, 79, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); *Danly Machine Corp. v. United States,* 356 F.Supp. 1284, 1290 (N.D.Ill.1972), *aff'd,* 492 F.2d 30 (7th Cir. 1974). The burden is a heavy one. "Treasury regulations constitute contemporaneous construction by those charged with administration of these statutes and should not be overruled except for weighty reasons." *Kahler Corp. v. Commissioner,* 486 F.2d 1, 4 (8th Cir. 1973). We consider in turn the arguments advanced by taxpayers to show the regulation to be invalid.

---

**4.** Treas.Reg. § 1.1361–16(b) provides:

(b) *Termination of all elections on January 1, 1969.* If any election under section 1361(a) with respect to an unincorporated business enterprise would be effective on January 1, 1969, without regard to paragraph (2) of section 1361(n) and the provisions of this paragraph, such election shall terminate on January 1, 1969. The section 1361 corporation and its owners shall be treated as if the corporation had distributed its assets in a complete liquidation on January 1, 1969. The effect of the liquidation on the owners shall be determined under the provisions of sections 331 and 334(a). (However, a liquidation which is followed by a transfer to another corporation of all or part of the assets of the liquidating corporation or which is preceded by such a transfer may have the effect of the distribution of a dividend or a transaction in which no loss is recognized and gain is recognized only to the extent of "other property". See sections 301 and 356.) The provisions of paragraph (c)(1) of § 1.1361–11 are not applicable to business enterprise with respect to which an election has been terminated under this paragraph. The requirements of section 6043 (relating to information returns) and paragraph (d) of § 1.331–1 (relating to returns of shareholders) must be complied with.

## I.

### Statutory Arguments

A. Inconsistency with Congressional Intent

■ One ground for finding a Treasury regulation invalid is inconsistency with the Internal Revenue Code itself. A regulation which is "plainly inconsistent" with the governing statute is invalid as an improper exercise of the power delegated the Secretary by Congress. *See United States v. Cartwright,* 411 U.S. 546, 557, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973); *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948); *World Service Life Insurance Co. v. United States,* 471 F.2d 247, 250 (8th Cir. 1973).

Taxpayers argue that there is inconsistency here because the code is silent on the question of liquidation treatment on the termination of § 1361 status, and the regulation expressly imposes such treatment. They argue that imposing liquidation treatment is inconsistent with the original purpose of § 1361, which was to give the benefit of corporate treatment to certain small businessmen, without compelling them to accept corporate form. *Mathis v. United States,* 430 F.2d 158, 160 (7th Cir. 1970); *Estate of Willett v. Commissioner of Internal Revenue,* 365 F.2d 760, 762 (5th Cir. 1966).[5]

Whatever might have been the intent of the 1954 Congress which enacted § 1361, it was clearly the intention of Congress in 1966 when it repealed the section to impose liquidation treatment on the termination of § 1361 status. The Senate Finance Committee Report, S.Rep.No. 1007, 89th Cong., 2d Sess. 1, 22, [reprinted in] 1966–2 U.S. Code Cong. & Admin.News pp. 2141, 2151, stated:

> The revocation or termination of an election (without any transfer to an actual corporation) under your committee's amer lment will be treated, for Federal income tax purposes, as a complete liquidation of a corporation.

■ The committee report, as the "considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation", is of great value in determining congressional intent. *Zuber v. Allen,* 396 U.S. 168, 186, 90 S.Ct. 314, 324, 24 L.Ed.2d 345 (1969); *Housing Authority of Omaha v. United States Housing Authority,* 468 F.2d 1, 6 n. 7 (8th Cir. 1972), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1973).[6] The regulation is consistent with that clearly manifested intent.

B. Absence of Statutory Authority

Taxpayer Simpson contends that the regulation is invalid because the Secretary was without authority to promulgate it. The necessary authority is to be found, if at all, in 26 U.S.C. § 7805, which provides in pertinent part:

> (a) Authorization.—Except where such authority is expressly given by this title

---

**5.** In *Estate of Willett v. Commissioner,* 365 F.2d 760 (5th Cir. 1966), the Fifth Circuit reversed a Tax Court holding that a transfer of its assets by a § 1361 entity to a de jure corporation was first a taxable liquidation to the owners and then a nontaxable transfer to the corporation. Judge Wisdom held the transaction was in reality one nontaxable step in which the taxpayer gained no access to the accumulated earnings or assets of the entity. The opposite factual events occurred in the cases before us. As a result of the termination of elections the taxpayers had uncontrolled access to the appreciated assets and accumulated earnings without any formal distribution or termination of the entity.

**6.** This case is unlike *Bostwick v. United States,* 521 F.2d 741, 743 (8th Cir. 1975), where the position taken in a committee report was explicitly rejected by Congress.

Resort to this legislative history is not foreclosed by any lack of ambiguity in the statute itself. "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" *Train v. Colorado Public Interest Research Group,* 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976); *United States v. American Trucking Ass'ns, Inc.,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *United States v. Eagle,* 539 F.2d 1166, 1171 n. 5 (8th Cir. 1976).

to any person other than an officer or employee of the Treasury Department, the Secretary or his delegate shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.

■ Congress created § 1361, providing that electing businesses would be treated as corporations "with respect to operation, distributions, sale of an interest, and any other purpose". 26 U.S.C. § 1361(c). It thereafter repealed this special provision, without providing details on the tax effects of this termination. It was "needful" in order "to carry out the will of Congress" that regulations defining effects be promulgated. Particularly where an unequivocal manifestation of congressional intent that termination be treated as a liquidation appears, the regulation was within the scope of the Secretary's authority. *See Commissioner v. Bilder*, 369 U.S. 499, 502, 82 S.Ct. 881, 8 L.Ed.2d 65 (1962).

Taxpayer Simpson contends that § 7805 delegates the power to promulgate interpretive, but not legislative, regulations. He argues that Treas.Reg. § 1.1361–16, because it imposes a tax which is not expressly mentioned by statute, is legislative.

It is true that the power to adopt regulations is not the power to make law, but is the power to carry into effect the will of Congress as expressed by statute. *Dixon v. United States*, 381 U.S. 68, 74, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); *United States v. Levy*, 533 F.2d 969, 973 (5th Cir. 1976). Where as here, however, the statute is silent as to the tax treatment to be given as a result of the legislative event, a regulation which gives effect to the intent of Congress clearly expressed in the legislative history is proper. *See, e. g., Commissioner v. Bilder*, 369 U.S. 499, 82 S.Ct. 881, 8 L.Ed.2d 65 (1962); *Fulman v. United States*, 545 F.2d 268 (1st Cir. 1976).

C. Unreasonableness of Regulation

■ Taxpayers argue that even a regulation promulgated pursuant to proper authority, and not inconsistent with the governing statute, may be invalidated if it is "unreasonable." This position finds authority in the formulation: If a Treasury Regulation "is a reasonable interpretation of the [Internal Revenue Code] and as such does not distort the intent of Congress, then it must be sustained * * *." *World Service Life Ins. Co. v. United States*, 471 F.2d 247, 250 (8th Cir. 1973). Regulations have on occasion been held invalid on grounds of unreasonableness alone. *Allison v. United States*, 379 F.Supp. 490, 493 (M.D.Pa.1974); *Smith v. United States*, 301 F.Supp. 1016, 1022 (S.D.Fla.1969). But even if this is adequate ground for striking down a regulation, it does not avail taxpayers here; this regulation is not unreasonable.

Taxpayers' argument for unreasonableness is based on the proposition that a proprietor should not be subjected to liquidation treatment when he continues to carry on his business. There is, as the Tax Court noted in *Prescott*, some inequity in this result. Neither Prescott nor Simpson was in any different situation on January 1, 1969, than he was on December 31, 1968. Both taxpayers conducted their businesses exactly as they had before; there is no indication that either taxpayer transferred business assets to personal use. Yet, both taxpayers were taxed as of that date on the appreciation in value of their businesses.

The alternative treatment advanced by taxpayers is, however, at least as inequitable. Taxpayers seek to change from corporate to unincorporated tax status with no consequences to themselves. They had the benefit of fictional corporate identities, and corporate tax rates, from the time of their § 1361 elections; that is, from 1954 in Prescott's case and from 1960 in Simpson's. A condition of this benefit was that the businesses would be treated as corporations for all purposes, including distributions. 26 U.S.C. § 1361(c). Not to tax appreciation in value of the businesses on termination of this fictional corporate treatment would mean that taxpayers would escape the cost exacted from them for the benefit of corporate treatment. This would be an unmerited windfall.

It appears that Congress and the Secretary were faced with two choices as to proper treatment of this termination, neither entirely satisfactory. The choice to treat the termination as a liquidation cannot be termed unreasonable.

We hold that Treas.Reg. § 1.1361–16(b) is reasonable, consistent with statutory purpose, and authorized by statute. The only remaining question is whether it meets constitutional requirements.

## II.

### Constitutional Arguments

A.  Unapportioned Direct Tax

U.S.Const. Art. I, § 9, cl. 4 prohibits Congress from levying unapportioned direct taxes. The Sixteenth Amendment made an exception to the apportionment requirement for taxes levied on incomes.[7] It therefore becomes important to determine whether there is income here on which an unapportioned tax may constitutionally be laid.

The argument that a particular benefit to the taxpayer is not income in this constitutional sense is not a new one. It was first made in *Eisner v. Macomber*, 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521 (1920). There the Court found Congress' attempt to tax stock dividends to be unconstitutional, because no income was present; income being "the gain derived from capital, from labor, or from both combined". 252 U.S. at 207, 40 S.Ct. at 193. A stock dividend was not income because nothing had been *derived*, that is, severed from the taxpayer's investment and drawn or received by him. This was the determinative fact. *Id.*

If *Eisner* stood undiminished by subsequent decisions, it would offer strong support to taxpayers' position. However, the Supreme Court has found it necessary to abandon the attempt at an all-inclusive definition of income which it had undertaken in *Eisner. See* 1 J. Mertens, Law of Federal Income Taxation, § 5.03 (1974). In *Helvering v. Bruun*, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864 (1940), the Court held that a lessor realized income on the termination of a lease in the value of any improvements to the land made by the lessee, notwithstanding the improvements were not severed from the land. The Court thus abandoned the idea that gain must be severed from capital to be taxable. *See also Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431, 75 S.Ct. 473, 99 L.Ed. 483 (1955) (noting this change).

In place of the concept of severance, the Court, in determining whether there has been income, now looks to determine if there has been a "taxable event." *United States v. Davis*, 370 U.S. 65, 67, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962); *Commissioner v. Glenshaw Glass Co., supra*, 348 U.S. at 431, 75 S.Ct. 473. The question asked is whether some event has occurred which marks an appropriate time to tax the increase in value of assets. *United States v. Davis, supra.*

The requirement of a taxable event has been satisfied here. The action of Congress, as a result of which the taxpayers' businesses, which had fictional corporate status, returned to taxation as proprietorships, created an event upon which it was appropriate to tax the increase in value of those businesses. We conclude therefore that the tax was protected from Article I, § 9 by the income exception contained in the Sixteenth Amendment.[8]

---

7.  The tax imposed by § 1361 on the termination of corporate treatment is not, of course, apportioned among the states.

8.  In other contexts, Congress has taxed the owners of a business entity on profits earned by the entity, although the profits have not been distributed. The constitutionality of this action has been sustained. *See Estate of Whitlock v. Commissioner of Internal Revenue*, 494 F.2d 1297 (9th Cir.), *cert. denied*, 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 67 (1974); *Garlock, Inc.*

*v. Commissioner*, 489 F.2d 197 (2d Cir. 1973), *cert. denied*, 417 U.S. 911, 94 S.Ct. 2608, 41 L.Ed.2d 215 (1974) (sustaining 26 U.S.C. § 952, treating "Subpart F income" of a controlled foreign corporation as includible in the gross income of shareholders); *Eder v. Commissioner*, 138 F.2d 27 (2d Cir. 1943) (sustaining predecessor to 26 U.S.C. § 551, treating undistrib-

B. Retroactivity

▮▮ Taxpayers contend that imposition of liquidation treatment as of January 1, 1969, is an improper retroactive tax, because it taxes income from prior years. Even if it is assumed that a tax on prior years' appreciation is retroactive, the contention is frivolous. An income tax statute may apply retroactively without violation of the Constitution. *Brushaber v. Union Pacific R. R. Co.*, 240 U.S. 1, 20, 36 S.Ct. 236, 60 L.Ed. 493 (1916); *Shanahan v. United States*, 447 F.2d 1082, 1083 (10th Cir. 1971); *First National Bank in Dallas v. United States*, 190 Ct.Cl. 400, 420 F.2d 725, 729, *cert. denied*, 398 U.S. 950, 90 S.Ct. 1868, 26 L.Ed.2d 289 (1970)). Moreover, as the government notes in its briefs, the taxable event—the termination of the election—occurred after the enactment of the statute and the regulation.

### III.

#### Conclusion

Taxpayers have not sustained their burden of showing § 1.1361–16(b) to be an invalid interpretation of the Internal Revenue Code or a violation of the Constitution. Therefore, the judgment of the Tax Court in favor of the Commissioner in No. 76–1634 is affirmed; the judgment of the District Court in favor of taxpayer Simpson in No. 77–1084 is reversed.[9]

---

uted foreign personal holding company income as income of the company's United States shareholders). *See also* 26 U.S.C. §§ 1371–78, treating undistributed income of an electing Subchapter S corporation as income to its shareholders.

**9.** One argument is made by taxpayer Prescott that is peculiar to him. Prescott deals in state and municipal bonds. He argues that any increase in value of the bonds or interest previously earned by the bonds should not be included in the gains from liquidation, because it is excluded from tax under 26 U.S.C. § 103. Section 103 applies exclusively to "interest." It excludes interest on certain obligations from tax. The increase in value of these obligations here is not interest. Funds received as interest on the bonds, while tax exempt as to the § 1361 corporation at time of receipt, lost their character as interest when received. When treated as distributed in liquidation, they are simply assets of the corporation, which must be included in taxpayers's amount realized in computing gain under 26 U.S.C. § 1001.