ROY S. CONOVITZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Conovitz v. Comm'r
Docket No. 12376-77. United States Tax Court
T.C. Memo 1980-22; 1980 Tax Ct. Memo LEXIS 567; 39 T.C.M. (CCH) 929; T.C.M. (RIA) 80022; January 23, 1980, Filed David A. Pravda, for the petitioner. Ellis L. Reemer, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined the following deficiencies in income tax and additions to tax for the years 1973 and 1974: Additions to Tax, I.R.C. 1954
Year
Deficiency
Sec.6651(a)
Sec.6653(a)
Sec.6654(a)
1973
$17,395 *
$2,909.45
$869.75 $326
1974
15,539 *
2,419.00
777.00
263
Petitioner timely filed a petition for redetermination of the deficiencies and additions to tax. At the time the petition was filed he *571 resided in Pacific Palisades, California, in the greater Los Angeles area. During the tax years petitioner and his wife resided in New York, New York. Petitioner did not undertake to file income tax returns for 1973 and 1974 until October of 1977, as hereinafter more fully set forth. Prior to this time petitioner and his wife, Diana Conovitz, had received extensions of time to file 1973 and 1974 returns. By filing Forms 4868, they first obtained the familiar automatic two-month extensions from April 15, 1974 and April 15, 1975, in respect of the returns for 1973 and 1974. Upon application they obtained further extensions, and upon expiration of the latter, they applied for and were granted final extensions until October 15, 1974, and October 15, 1975, to file 1973 and 1974 returns, respectively. The extension requests were filed by petitioner's attorney, Mr. David A. Pravda. The final extension request for 1973 indicated that a return of petitioner and Diana Conovitz for a prior year was being audited, and that issues resolved in the audit might affect the 1973 return. The final extension request for 1974 represented that the outcome of a pending Tax Court case involving *572 petitioner and Diana Conovitz would affect returns for subsequent years. The Tax Court case referred to, Docket No. 9458-74, raised issues concerning the Commissioner's disallowance of medical and employee business expense deductions for 1971. That case was never tried; it was resolved by a decision entered on March 15, 1977, based upon a settlement stipulation of the parties. No returns were filed for 1973 or 1974 during the periods as finally extended, and, upon the lapse of substantial periods of time thereafter, an office auditor for respondent, acting under section 6020(b), I.R.C. 1954, prepared substitutes for returns of the petitioner for 1973 and 1974. [1] These returns contained the name, New York address, and social security number of petitioner. Aside from these details, the remainder of each such return was not completed. However, these returns were prepared at the same time and in conjunction with Forms 1902-E, which set forth items of petitioner's gross income (wages) and allowed the standard deduction as well as a single exemption for petitioner. These substitute returns and the corresponding Forms 1902-E were processed together by the *573 I.R.S., and a deficiency was determined upon the basis thereof. The notice of deficiency was mailed to petitioner on September 15, 1977, at 110 Riverside Drive, New York City. This address is the same address for petitioner as is shown on his W-2 forms for 1973 and 1974. It is also the same address which is shown on the applications for automatic extension of time to file (Forms 4868), filed for the tax years 1973 and 1974; two other extension requests show petitioner's address as being in care of his attorney, David Pravda. The deficiency notice determined that petitioner's filing status was that of a married person filing separately. Petitioner was determined to have income from wages of $43,000 in 1973 and $39,800 in 1974. The standard deduction of $1,000 was allowed in each year. Petitioner was also allowed a personal exemption of $750. The deficiency notice determined petitioner's tax and additions to tax as set forth above. Subsequent *574 to the mailing of the deficiency determination, petitioner "filed" what purported to be 1973 and 1974 joint income tax returns with Diana Conovitz. David A. Pravda appeared on both returns as preparer, and his signature was dated October 10, 1977. The 1974 return was signed by the taxpayers on October 13, 1977, and stamped as received by the Internal Revenue Service in Holtsville, New York, on October 21, 1977; the 1973 return was "filed" at the same time. The 1973 return and the 1974 return both had attached W-2 forms. The W-2 form for petitioner for 1973 reported wages of $43,000, and state and city taxes withheld of $2,228.80. A W-2 form for Diana Conovitz indicated that she received wages of $433.75 in 1973. The W-2 form for petitioner and a New York City form attached showed his 1974 wages as $39,800 and state and local taxes paid of $2,255. The 1974 return also showed that Diana Conovitz received $250 interest income from savings accounts. The petitioner argues that his filing status and the amount of allowable deductions should be determined from the 1973 and 1974 joint returns "filed" in October of 1977. He thus challenges the Commissioner's determination which computed *575 his tax liability upon the basis of the rates applicable to a married person filing separately.The respondent contends that petitioner is precluded from filing a joint return for 1973 because he filed to do so within three years of the due date of the 1973 return (section 6013 (b) (2) (B)), and also that he is not entitled to treat the 1973 and 1974 returns "filed" on October 21, 1977, as joint returns because he could not elect to file a joint return after the issuance of the notice of defiency (September 15, 1977) in respect of which he filed a petition with this Court (section 6013 (b) (2) (C)). Additional matters in dispute are: whether petitioner is entitled to any deductions in excess of the standard deduction; whether petitioner is entitled to any personal exemptions other than his own; and whether there was any error in the additions to tax determined by the Commissioner. 1. Petitioner's claimed right to joint return rates. We hold that petitioner is not entitled to the benefits of joint return rates for either 1973 or 1974. The matter is clear beyond question as to 1973, and the statute, as fairly construed, requires the same result as to 1974. (a) 1973. *576 Although section 6013 (b) (1) of the Code generally allows a taxpayer to elect to file a joint return even after a separate return has been filed, the limitations on that right set forth in section 6013 (b) (2) render it inapplicable here. [2] Subparagraph (B) of section 6013 (b) (1) explicitly states that the election "may not be made"-- *577 (B) after the expiration of 3 years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse) * * * Petitioner's purported 1973 joint return was "filed" on October 21, 1977, more than three years after the April 15, 1974, due date of the original return. It is clear in these circumstances that section 6013 (b) (2) (B) precludes the election of joint return status by petitioner. Durovic v. Commissioner, 54 T.C. 1364, 1401-1402 (1970), affd. on this issue, 487 F.2d 36, 41-42 (7th Cir. 1973) (Barnes, J.), cert. denied 417 U.S. 919 (1974). See Marshall v. Commissioner, 35 T.C.M. 138, 141, 45 P-H Memo. T.C. par. 76,034 at 138 (1976). Cf. Anderson v. Commissioner, 32 T.C.M. 762, 768, 42 P-H Memo. T.C. par. 76,155 at 745-746 (1973); Dritz v. Commissioner, 28 T.C.M. 874, 879-880, 38 P-H Memo. T.C. par. 69,175 at 947-948 (1969), affd. per curiam 427 F.2d 1176 (5th Cir. 1970). While it might be contended that the limitations of section 6013 (b) (2) are applicable only *578 where a separate return has been previously filed (cf. Rev. Rul. 72-539, 1972-2 C.B. 634, the "substitute for return" for each year under the authority of section 6020 (b) (1)[3] qualifies as such separate return. By virtue of those section 6020 (b) (1) returns, petitioner must be regarded as having filed as a married person filing separately, since section 6020 (b) (2) explicitly characterizes such returns as follows: (2) Status of Returns.--Any return so made and subscribed by the Secretary shall be prima *579 facie good and sufficient for all legal purposes. Section 6020 (b) is a procedural device which supplies the Internal Revenue Service with a means to assess tax obligations not reported by the taxpayer and to impose various "civil" penalties. United States v. Harrison, 72-2 U.S.T.C. 85,352, 85,353, 30 AFTR 2d 72-5367, 72-5368 (E.D.N.Y.), affd. 73-1 U.S.T.C. 80,618, 31 AFTR 2d 73-967 (2d Cir. 1972), cert. denied 411 U.S. 965 (1973). When the Commissioner is required to prepare a return because a taxpayer does not file a return, considerations of equity and administrative convenience dictate that the taxpayer must be bound by elections in the return so prepared and may not require the Commissioner to start anew the assessment machinery merely by filing a belated return. See Spanos v. Commissioner, 212 F. Supp. 861, 863-864 (D. Md.), affd. in part and revd. in part 323 F. 2d 108 (4th Cir. 1963). Durovic v. Commissioner, supra, 54 T.C. at 1402. Cf. United States v. Harrison, supra, 72-2 U.S.T.C. at 85,354, 30 AFTR 2d 72-5369. *580 When the taxpayer fails to file a return, he runs the risk of being bound by elections in the return filed on his behalf by the Commissioner. See Del Mar Addition v. Commissioner, 113 F. 2d 410, 412 (5th Cir. 1940); Second Carey Trust v. Commissioner, 2 T.C. 629, 633 (1943). Accordingly, the return filed by the Commissioner on petitioner's behalf is treated as making a valid election to file as a married person filing separately. Petitioner is therefore bound by the limitations of section 6013 (b) (2), including subparagraph (B) which explicitly rules out his right to make a subsequent inconsistent election after the expiration of the three-year period specified therein. (b) 1974. Since the "last date prescribed by law" for filing the 1974 return within the provisions of section 6013 (b) (2) (B) was April 15, 1975, it is plain that the three-year period which was fatal to petitioner's position as to 1973 is not applicable to 1974. The attempted joint return for 1974 was "filed" on October 21, 1977, prior to the expiration of the three-year period. However, petitioner's right to file a joint return for 1974 is foreclosed by section 6013 *581 (b) (2) (C), which provides that the election to file a joint return "may not be made" -- (C) after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213 * * *. These provisions of subparagraph (C) are applicable not only with respect to 1974, but also with respect to 1973, and thus supply an additional reason for the result that we have already reached as to 1973 under subparagraph (B). The record plainly establishes that the deficiency notice herein was issued on September 15, 1977, more than a month prior to the attempted filing of the joint returns on October 21, 1977. The basic condition for the applicability of subparagraph (C) has thus been satisfied. Moreover, the final condition set forth in (C) has also been satisfied, since petitioner "[filed] a petition with the Tax Court within the time prescribed in section 6213", namely, the very petition which initiated this case. To be sure, that petition was filed on December 19, 1977, after the abortive effort to file the joint returns. But the *582 statute does not require that the petition be filed before the attempted joint returns. It provides merely that the election to file the joint returns may not be made after the deficiency notice has been mailed, "if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213." In other words, no time limit is specified for the filing of the petition other than that prescribed in section 6213. And to the extent applicable here, section 6213 (a) fixes a period of 90 days after the notice of deficiency has been mailed within which a petition may be filed. This result reflects a pattern of legislative intention that emerges from a consideration of both subparagraphs (C) and (D) of section 6013 (b) (2). Both appear to deny married taxpayers the right to file joint returns where there is litigation contesting liability for the year involved and where the Commissioner would be deprived of the opportunity of making an effective examination of the joint return followed by a determination based on such examination. As we have interpreted (C), a taxpayer's privilege of filing a joint return is terminated when a notice of deficiency is *583 issued if a petition is thereafter filed with this Court by the taxpayer, while (D) would allow the filing of a joint return up until the time a complaint is filed in the district court or Court of Claims. Since Tax Court litigation involves procedural and administrative considerations different from those in such other courts, this explains what might appear upon a superficial reading to be an inconsistency in the statute, but which in fact represents a harmonious statutory plan. A refund suit must be preceded by submission of a refund claim to the Commissioner, [4] and suit cannot be brought until the Commissioner denies the claim or upon the lapse of six months from the time the claim was filed. [5] Moreover, when suit is brought, the issues involved must be the same as those raised in the claim for refund. [6] Thus, the statutory scheme for refund suits gives the Commissioner a reasonable opportunity to investigate the legal and factual issues involved in the taxpayer's amended return prior to the time he is required to defend his determination in court. Tax Court litigation would afford the Commissioner no such comparable opportunity for investigation if the taxpayer were permitted *584 to file a joint return after the determination of a deficiency. Upon the issuance of a valid deficiency notice, [7] and the filing of a timely petition, [8] this Court would have jurisdiction to redetermine the deficiency for the taxable year in issue, considering an amended return if necessary. [9] The Commissioner would be barred from assessing the deficiency with respect to the original return, section 6213(a), I.R.C. 1954, and would be forced to litigate the taxpayer's liability for the year in issue in this Court. Furthermore, the Commissioner would be prevented by the statute from sending a second notice of deficiency to the taxpayer. Only one notice of deficiency is permitted to be issued by the Commissioner for any single tax to the same taxpayer for a single tax year if the taxpayer files a petition with this Court. See section 6212 (c) (1), I.R.C. 1954. McCue v. Commissioner, 1 T.C. 986, 987-988 (1943). See generally Breman v. Commissioner, 66 T.C. 61, 65-70 (1976). Instead, the Cimmissioner would have but 60 days to file an answer to the petition, [10] even though the newly filed *585 joint return could pose potential factual and legal issues entirely different from those raised in the original deficiency notice. Moreover, as to any issues not addressed in the original deficiency notice or presented in the petition but raised in the Commissioner's answer based on a review of the joint return, the Government would bear the burden of proof. [11] Since allowing a taxpayer to file a joint return up to the time of filing a Tax Court petition would impose such severe burdens on the Commissioner, we must conclude, in the absence of clear statutory language or legislative history requiring such result, that Congress intended to terminate a taxpayer's right to file a joint return at the time of the issuance of the deficiency notice if a petition is filed with this Court within the time allowed by section 6213 (a). Thus construed, both subparagraphs (C) and (D) of section 6013 (b) (1) reflect a consistent statutory scheme. *586 In sum, petitioner received a notice of deficiency, [12] subsequently "filed" joint returns, and later filed a petition with the Tax Court with respect to the notice of deficiency. By filing the petition, petitioner has run afoul of the plain language of section 6013 (b) (2) (C), and he accordingly is not entitled to have his tax liability for either 1973 or 1974 determined on the basis of the joint return rates. [13] Had Congress intended a contrary result, it would have been a matter of simple draftsmanship to recast the language of (C) so as to make clear that a joint return could be filed up to the time of filing a petition in this Court. The result that we reach herein is in accord with Jacobson v. Commissioner, 73 T.C.     (December 31, 1979). *587 2. Whether petitioner is entitled to deductions in lieu of the $1,000 standard deduction allowed by the Commissioner. The principal issue raised by the petitioner, apart from his alleged right to have his 1973 and 1974 taxes computed on the basis of joint return rates, is that he is entitled to the deductions claimed in the joint returns which he "filed" in October of 1977. These deductions related to claimed medical expenses, taxes, interest, charitable contributions, miscellaneous items, and employee business expenses. The Commissioner does not challenge any of these provided that they are substantiated. Throughout the history of this controversy, the Commissioner has demanded proof of the expenditures allegedly made, and it does not appear that petitioner supplied any substantiation during the administrative consideration of his case or to Government counsel in preparation for the trial of the case. Petitioner has the burden of proving that he is entitled to deductions beyond those allowed by the Commissioner. Rule 142 (a), Tax Court Rules of Practice and Procedure. See *588 Roberts v. Commissioner, 62 T.C. 834, 839 (1974). He did not appear at the trial, and, apart from certain materials hereinafter noted in respect of New York taxes, no documentary or other satisfying evidence was offered on his behalf to support the claimed deductions. The only testimony presented was that of his attorney, who prepared the returns, to the effect that he saw documentation for the deductions in controversy when he prepared the returns. Such evidence is plainly insufficient to substantiate petitioner's right to the deductions, and is not sufficient to overcome the presumptive correctness of the Commissioner's determination. See Geiger v. Commissioner, 440 F. 2d 688, 689-690 (9th Cir.), cert. denied 404 U.S. 851 (1971). However, there is evidence in the record to substantiate a deduction for state and local taxes. A copy of petitioner's purported 1973 joint return claims a deduction of $3,810 for state and local income taxes. The W-2 form attached to this return shows withholdings of $1,628.20 for New York income tax and $600.60 for New York City income tax. Petitioner's purported 1974 joint return claims deductions *589 of $2,255 for state and local income taxes. The W-2 form attached to the return shows $1,793.90 of New York State income tax withheld in 1974. A copy of a similarly attached form from the City of New York Finance Administration shows New York City taxes withheld of $461.10. Since the Government does not dispute the accuracy of the copies of petitioner's purported joint returns, we find these forms to be adequate evidence of the amount of state and local income taxes paid. Accordingly, petitioner is entitled to deductions from adjusted gross income of $2,228.80 for 1973 and $2,255 for 1974, in lieu of the standard deduction allowed by the respondent. Petitioner's absence at the trial and the failure of his counsel to present any evidence of consequence to substantiate the claimed deductions apart from New York taxes call for some comment in the circumstances of this case, particularly since, during the June 18, 1979, New York trial calendar when the case was heard, his counsel vigorously and repeatedly requested the Court to grant a continuance. In his requests for a continuance counsel stressed the fact that the petitioner resided in California whereas the trial was being held *590 in New York, and that if counsel were given more time he could obtain the necessary documentation from petitioner to substantiate the deductions in dispute.Plausible as these reasons might appear at first blush, we found them without merit and indeed possibly lacking in bona fides.
The fact that the trial was being held in New York was entirely a matter of petitioner's own choice. A request on petitioner's behalf that it be held in New York was filed on December 19, 1977, at the same time the petition was filed, after petitioner had moved from New York to California, and that request was granted by the Court on the same day.But even if it later appeared to petitioner or his counsel that it would be more convenient to hold the trial in Los Angeles, a motion for change of place of trial could have been made long before the case was placed on the June 18, 1979, New York trial calendar, and such motion undoubtedly would have been granted. Counsel's first request for a continuance was made orally on June 18, 1979, at the very time of the call of the trial calendar. Plainly, that request was untimely under our Rule 134. [14] And even at that late date he did not ask for a change of *591 place of trial. Moreover, there was no justification whatever for a continuance in view of the history of the case. The Court's "Notice Setting Case For Trial" was served March 16, 1979. In notified the parties that the case was set for trial at the session in New York beginning June 18, 1979, and stated in part: The parties are required to agree in writing to all facts and all documents that are not in dispute. The parties should confer with each other promptly in order to comply with this requirement. These standard instructions are in accord with one of the principal underlying objectives of our Rules which contemplate that the parties are expected to confer with each other prior to trial, not only to eliminate issues that are susceptible of settlement but also to stipulate all facts that are not fairly in dispute with respect *592 to issues that remain to be tried. However, it is undisputed that petitioner's counsel made no affirmative effort to reach respondent's counsel to comply with the foregoing instructions, and that respondent's counsel made repeated and unsuccessful efforts (beginning at least at early as the issuance of the trial calendar in March 1979) to meet with petitioner's counsel in order properly to prepare the case for trial. Indeed, Government counsel informed the Court without contradiction that over the two weeks immediately preceding the June 18, 1979 calendar call, he attempted unsuccessfully on at least 10 different occasions to reach petitioner's counsel by phone, and succeeded in speaking to him only once (on the Tuesday or Wednesday preceding the Monday of the June 18, 1979, calendar call), but they never met prior to the calendar call. At the June 18, 1979, calendar call petitioner's counsel for the first time requested a continuance from the Court, stating that he and Government counsel "have not gotten together to really go over this case", that the "case lends itself to a settlement", and that it's merely a "question of producing considerable substantiation for [Government *593 counsel] which hasn't been dones, and in fact hasn't even commenced". He emphasized petitioner's residence in California as creating difficulties in obtaining records from him. There was no indication that cunsel had made any efforts to obtain the necessary records prior to the June 18, 1979, calendar call for the purpose of settling or trying the case. The Government strenuously opposed the motion. It was clear to us that petitioner's counsel (with or without acquiescence by petitioner himself) had been inexcusably dilatory. We denied the motion for continuance, and ordered the parties to report the next morning "what progress can be made towards either settling this case or trying it". On Tuesday, June 19, 1979, petitioner's counsel reported that he had spoken with petitioner the preceding day by phone in the late afternoon (California time), that petitioner was preparing a "packet" of substantiation that was being mailed "by Special Delivery today [June 19, 1979], from California", and that counsel didn't expect to get the packet until late Wednesday or Thursday. [15] He stated further that if the Government were not satisfied with such materials there would be insufficient *594 time for petitioner to come to New York from the West Coast for purposes of trial, and counsel again requested the Court for a continuance. The Court denied that request, and ordered that the case be tried Friday, June 22, 1979, the last day of that session of the Court in New York. When the case was called for trial on Friday, June 22, 1979, petitioner's counsel informed the Court that "the mailing from the taxpayer of substantiation" had not in fact been received as of that morning, notwithstanding counsel's representation that petitioner had assured *595 him by phone that he had in fact "mailed it on Tuesday". A further representation was then made to the Court that petitioner's wife had the flu and his two children had the chicken pox, and that petitioner for that reason was unable to be present. Counsel again asked for a continuance. We were not satisfied either as to the diligence or good faith of the petitioner or his counsel or both, and, although one or more of the excuses offered may have had some possible validity, we were nevertheless left with the definite impression that on the whole there had been a substantial amount of stone-walling either by petitioner or his counsel or both. We insisted, over the protests of petitioner's counsel, that the trial go forward. Counsel himself took the witness stand -- a matter which of itself was of questionable propriety --, but the evidence which he had to offer was meager and largely unsatisfying. We have dealt at some length herein with the foregoing matters because we deem it important to explain that petitioner's failure of proof was not the result of any arbitrary action by the Court in refusing to continue the trial of the case. Indeed our doubts as to the good faith of *596 petitioner or his counsel or both and our impression of their Olympian indifferences to adhering to the norms of the orderly conduct of litigation in this Court have been enhanced by two circumstances following the trial, which are set forth in the footnote below. [16]
*597 3. Personal exemptions. In his determination of deficiency the Commissioner allowed only one personal exemption, namely, for petitioner himself. However, although the materials in the record are scanty in respect of personal exemptions, we are reasonably satisfied that petitioner furnished the principal support for his minor son Peter during 1973 and 1974, and is therefore entitled to an exemption in respect of him for both years. On the other hand, he is not entitled to an exemption in respect of his wife for either year. A copy of a Form W-2 issued to her for 1973 is in the record and discloses that she received some earnings during that year. Moreover, the record also discloses that she had some interest incoem in 1974. In the circumstance, petitioner is precluded from claiming his wife as an exemption by reason of section 151(b), I.R.C. 1954, which establishes the conditions under which a taxpayer may be allowed an exemption for his spouse in the absence of a joing return.One of those conditions is that "the spouse, for the calendar year in which the *598 taxable year of the taxpayer begins, has no gross income". And since petitioner's wife had some gross income in both 1973 and 1974, an exemption for her is not available to petitioner for either year. 4. Additions to tax under section 6651(a). The Commissioner has determined that petitioner failed to file a timely return for the years 1973 and 1974, and that petitioner is accordingly liable for the addition to tax imposed by section 6651(a). [17]To avoid this addition to tax, petitioner has the burden of proving that his failure to file was due to "reasonable cause". Lee v. Commissioner, 227 F. 2d 181, 184 (5th Cir. 1955), cert. denied 351 U.S. 892 (1956), affg. a Memorandum Opinion of this Court; BJR Corp. v. Commissioner, 67 T.C. 111, 130-131 (1976). See Sanderling, Inc. v. Commissioner, 571 F. 2d 174, 178 (3d Cir. 1978). Cf. O'Neill v. Commissioner, 271 F. 2d 44, 51 (9th Cir. 1959). Petitioner has failed to carry his burden of proof. *599 The only evidence of reasonable cause presented on petitioner's behalf was the testimony of David Pravda, petitioner's counsel, that he had advised petitioner not to file returns until the controversy concerning petitioner's 1971 return was resolved. To be sure, reliance on tax advisers who are competent and fully advised of all relevant facts may in appropriate circumstances serve to establish that a failure to file a required return is due to reasonable cause and not due to willful neglect. Commissioner v. American Ass'n of Engineers Employment, Inc.,204 F. 2d 19, 21 (7th Cir. 1953); Burton Swartz Land Corp. v. Commissioner, 198 F. 2d 558, 560 (5th Cir. 1952); O.Falk's Dept. Store, Inc. v. Commissioner, 20 T.C. 56, 65 (1953). However, even assuming that Mr. Pravda gave such advice to petitioner, petitioner has presented no evidence to show that he actually relied on that advice, and such reliance must be shown before we can find that he had "reasonable cause" for failure to file. See Mayflower Investment Co. v. Commissioner, 239 F. 2d 624, 627 (5th Cir. 1956), *600 affg. 24 T.C. 729, 733 (1955). Moreover, the alleged reason fro delay in filing the 1973 and 1974 returns was thoroughly unsound. To be sure, one of number of issues involved in the disputs as to petitioner's 1971 taxes -- the deduction for office-in-home expenses -- was also one of a number of issues present in 1973 and 1974. But this is hardly an excuse for failing to file returns for 1973 and 1974 until long after the final extensions for filing had expired. Furthermore, the 1971 controversy was finally resolved by a settlement in March 1977, and in view of the fact that settlements are generally based on give and take regarding all the issues involved, it could hardly be regarded as authoritatively determining the proper disposition of one of those issues in a later year. Also, no returns were filed for 1973 and 1974 even promptly thereafter, and it was not until some seven months later in October 1977, after the Commissioner had made a determination of deficiency as to each of those years, that petitioner made any effort to file returns for those years. We conclude that the additions to tax under section 6651(a) were fully justified. 5. Additions *601 to tax under section 6653(a). The Commissioner has also determined that petitioner is liable for the additions to tax under section 6653(a)[18] where any underpayment is due to negligence or intentional disregard of rules and regulations. The respondent's determination of this addition to tax is presumptively correct, and petitioner has the burden of proving that his underpayment was not due to negligence or intentional disregard of rules and regulations. Marcello v. Commissioner, 380 F. 2d 499, 505-507 (5th Cir. 1967), cert. denied 389 U.S. 1044 (1968), affg. a Memorandum Opinion of this Court; Prescott v. Commissioner, 66 T.C. 128, 141 (1976), affd. 561 F. 2d 1287 (8th Cir. 1977); Rethorst v. Commissioner, 31 T.C.M. 1101, 1109, 41 P-H Memo. T.C. par. 72,222 at 1158 (1972), affd. per curiam 509 F. 2d 623 (9th Cir. 1974), cert. denied 421 U.S. 1002 (1975). Petitioner has presented no credible evidence to avoid the section 6653(a) additions to tax, and we hold that he has failed *602 to carry his burden of proof with respect to this issue. Hence, the Commissioner's determination of the section 6653(a) addition to tax is sustained.
6. Additions to tax under section 6654(a). Finally, the Commissioner has determined that petitioner is liable for the additions to tax provided by section 6654(a) for the underpaymnt of estimated tax. [19] The statute contains no provision allowing avoidance of the addition to tax if the failure to file was due to extenuating circumstances; this so-called penalty is mandatory unless specified conditions in the statute are met. United States v. Steck, 295 F. 2d 682, 685 (10th Cir. 1961); *603 Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). Petitioner has introduced no evidence to establish that one of the statutory exceptions applies. Accordingly, the Commissioner's determination must be sustained on this issue. See Reaver v. Commissioner, 42 T.C. 72, 83 (1964). Decision will be entered under Rule 155. Footnotes
*. The deficiency notice indicated that the "net tax due" was a lesser amount computed by subtracting "withheld credits" of $5,757.20 for 1973 and $5,862 for 1974.↩
1. Although these substitute returns were undated, they were prepared, as set forth shortly hereinafter, at the same time as the corresponding Forms 1902-E, which were dated 10-1-76 and 4-28-77 for the years 1973 and 1974, respectively.↩
2. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. * * *
(b) Joint Return After Filing Separate Return.-- (1) In General.--Except as provided in paragraph (2), if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse under subsection (a) and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year. * * * (2) Limitations for Making of Election.--The election provided for in paragraph (1) may not be made-- * * *
(B) after the expiration of 3 years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse); or (C) after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213; or (D) after either spouse has commenced a suit in any court for the recovery of any part of the tax for such taxable year * * *.↩
3. SEC. 6020. RETURNS PREPARED FOR OR EXECUTED BY SECRETARY * * *
(b) Execution of Return by Secretary.-- (1) Authority of Secretary to Execute Return.-- If any person fails to make any return (other than a declaration of estimated tax required under section 6015) required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.↩
4. Section 7422 (a), I.R.C. 1954; Omnibus Financial Corp. v. United States, 566 F. 2d 1097, 1101↩ (9th Cir. 1977). 5. Section 6532 (a), I.R.C. 1954↩. 6. See United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 272-273 (1931); Old Dominion Box Co. v. United States, 477 F. 2d 340, 346-347 (4th Cir.), cert. denied 414 U.S. 910 (1973). Cf. Martinez v. United States, 595 F. 2d 1147, 1148↩ (9th Cir.1979). 7. See secs. 6213 (a), 6214 (a), I.R.C. 1954. Rule 13 (a), Tax Court Rules of Practice & Procedure; DaBoul v. Commissioner, 429 F. 2d 38 (9th Cir. 1970); Estate of Scarangella v. Commissioner, 60 T.C. 184, 185↩ (1973). 8. See Rule 13 (a), Tax Court Rules of Practice & Procedure; Healy v. Commissioner, 351 F.2d 602, 603 (9th Cir. 1965); Vitale v. Commissioner, 59 T.C. 246, 247↩ (1972). 9. See generally section 6214 (a) to (b), I.R.C. 1954↩. 10. Rule 36 (a), Tax Court Rules of Practice and Procedure.↩
11. Rule 142 (a), Tax Court Rules of Practice and Procedure.↩
12. There was some suggestion at trial that petitioner may not have received the deficiency notice before he and his spouse filed their purported joint returns.However, we note that the statute does not require that the deficiency notice be received; instead, it refers to a notice of deficiency being "mailed to either spouse." Sec. 6013 (B) (2) (C), I.R.C. 1954. The statute in this respect follows the pattern of section 6213 (a) which fixes the time within which a petition may be filed with this Court by measuring the period from the date that the deficiency notice "is mailed." And the mailing of a valid notice of deficiency starts the running of the period even if the taxpayer does not in fact receive it. DeWelles v. United States, 378 F. 2d 37, 39 (9th Cir.), cert. denied 389 U.S. 996 (1967). Although the deficiency notice was sent to petitioner's New York residence as it appeared in the first request for extension of time to file returns, the record fails to establish that this was anything other than his last known address for purposes of mailing a deficiency notice. To be sure, the final requests for extension submitted on behalf of petitioner showed the office address of David Pravda as petitioner's address, but this did not necessarily change his last known address, since the same requests indicated that Mr. Pravda was petitioner's agent and thus that the address listed was not that of petitioner's residence, (cf. Alta Sierra Vista, Inc. v. Commissioner, 62 T.C. 367, 374 (1974), affd. without opinion 538 F. 2d 334 (9th Cir. 1976)), cf. Houghton v. Commissioner, 48 T.C. 656, 661-662 (1967), and since no power of attorney was introduced in evidence to show that petitioner had designated his attorney's address as his own address. Cf. Reddock v. Commissioner, 72 T.C. 21, 24-25↩ and n. 4 (1979). 13. Of course, as in the case of subparagraph (B) of section 6013 (b) (1)↩, the effectiveness of subparagraph (C) may also depend upon the prior filing of separate returns for the years in question. However, what we have said above in this connection under (B) relating to the substitute returns prepared by the Commissioner as satisfying this possible condition is equally applicable to the operative effect of subparagraph (C).
14. RULE 134. CONTINUANCES. * * * A motion for continuance, filed 30 days or less prior to the date to which it is directed, may be set for hearing on that date, but ordinarily will be deemed dilatory and will be denied unless the ground therefore arose during that period or there was good reason for not making the motion sooner. * * *↩
15. When asked by the Court why "Express Mail" was not being utilized (which assured next day delivery), petitioner's counsel pointed out that Express Mail was available only between post offices in cities that offer such service, and that his client did not reside "in one of the Post Offices that accommodate that service". Upon further questioning by the Court as to whether petitioner resided in Los Angeles (where Express Mail is available), counsel replied disingenuously that petitioner resided in Pacific Palisades. However, Pacific Palisades is at most merely a suburb of Los Angeles, within the greater Los Angeles area.↩
16. (1) Upon the conclusion of the trial the Court held a bench conference with counsel for both parties, and, out of concern that petitioner not be deprived of any properlyf allowable deductions, inquired whether the Government would consider any substantiation that his opponent might present if and when the so-called mailing from petitioner might arrive in New York. Respondent's counsel assured the Court that upon presentation of any such material to the Government establishing that any of the contested expenditures had in fact been made, petitioner would be given credit therefore notwithstanding that the trial had been completed and that petitioner was not entitled to any such leniency. We have not been informed that any such post-trial presentation was ever made to Government counsel. (2) At the conclusion of the trial the Court stated that it would receive opening briefs in 60 days, i.e., August 21, 1979. The Government filed a timely brief. No brief was received on petitioner's behalf. After the lapse of several weeks, our Clerk's Office succeeded in reaching petitioner's counsel by telephone to inquire as to his intentions in respect of filing a brief. Counsel was informed that such beief probably would be accepted by the Court if received or mailed by Friday, September 21, 1979, accompanied by a motion for leave to file out of time. No such beief was tendered at that time, and our Clerk's Office then, after several efforts, was finally able to reach counsel by phone. He stated that the brief was in the mail, and that if the Court did not receive it, he would send a copy. Again, no beief was received, and our Clerk's Office made further attempts to reach petitioner's counsel by telephone on a number of occasions beginning September 28, 1979, without success. He did not return any of these calles, nor did he send in a beief or a "copy", notwithstanding a message left for him that no brief had been received. No brief has even been tendered up to the date of this opinion. In respect of counsel's repeated failure to return phone calls frm our Clerk's Office, In the Matter of Ralph J. Baker, 297 U.S. 691 (1936) is relevant. There, a member of the bar of the Supreme Court (Ralph J. Baker) had failed to cash a small check sent to him by the Clerk of the Supreme Court as well as to respond to four letters from the Clerk. The Supreme Court issued a rule on December 9, 1935 (297 U. S. at 691), requiring Baker "to show cause why he should not be disbarred from the practice of the law in this Court for conduct unbecoming a member of the Bar of this Court." Thereafter, "Ralph J. Baker, having made return to the rule, apologizing for his neglect, and the check issued to him having been deposited", the Court ordered that (297 U.S. at 692): [The] respondent, Ralph J. Baker, be, and he is hereby, repremanded for unjustified failure in a duty owed by him as a member of the Bar of this Court to respond to communications addressed to him by the Clerk of this Court pertaining to the business of the Court; And it is further ordered that the rule to show cause aforesaid be, and it is hereby, discharged.↩
17. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax. - In case of failure -- (1) To file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefore (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate * * *↩
18. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. -- If any par of any underpayment (as defined in subsection (c) (1)) of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩
19. SEC. 6654. FAILURE BY INDIVIDUAL TO PAY ESTIMATED INCOME TAX. (a) Addition to the Tax. -- In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax * * * for the taxable year an amount determined at an annual rate established under section 6621 upon the amount of the underpayment * * * for the period of the underpayment * * *↩