**Clinton D. TUCKER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 619–82T.**

United States Claims Court.

Aug. 22, 1985.

E. John Eagleton, Tulsa, Okl., atty. of record, for plaintiff.

David C. Hickman, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., for defendant.

## SUPPLEMENTAL OPINION

REGINALD W. GIBSON, Judge:

In the process of entering final judgment, pursuant to its opinion filed on May 10, 1985,[1] new unanticipated issues have arisen causing the court to exert almost as much energy as it did on the initial opinion.

---

1. *See Tucker v. United States,* 8 Cl.Ct. 180 (1985).

Multiple questions have arisen impacting the net refund entitlement. Such questions are whether the taxpayer, Mr. Tucker, is entitled to have his taxes for the years 1979 and 1980 determined on the basis of married filing jointly, maximum tax rates and income averaging, or on the basis of married filing separately. Additional questions have also arisen as to whether Mr. Tucker is liable for penalties for failure to pay estimated taxes for the taxable year 1979 pursuant to § 6654 of the 1954 Internal Revenue Code, and whether the defendant may properly offset the plaintiff's 1980 overpayment by a proven 1979 underpayment ($2,434.38) when that deficiency was not initially raised in defendant's jeopardy assessment.

In its May 10, 1985 opinion, the court found that in 1979 and 1980, plaintiff received unreported taxable income of $28,986.20 and $155,497.38, respectively (an increase in 1979 and a decrease in 1980 over the amounts determined by the jeopardy assessment). As a consequence, he was therefore entitled to a partial *net* income tax refund for the taxable year 1980. In view of these findings, the court issued a Call on the Internal Revenue Service (IRS), pursuant to RUSCC 34(d)(1)(B) and 28 U.S.C. § 2507(a), for a calculation of the precise taxes, interest, and penalties for which the plaintiff is obligated regarding each of the taxable years 1979 and 1980, as well as the net refund due plaintiff (including taxes, penalty, and interest), consistent with the May 10, 1985 opinion, for the taxable year 1980.

On June 4, 1985, the court received the response from the IRS to the court's Call. In that response, it was noted by the Assistant District Counsel in the transmittal letter that "[f]or computational purposes the taxpayer is treated as married, filing separate and with one exemption for himself." Following receipt of the Call response, the court held several telephonic hearings with counsel for the parties to ascertain their approval or disapproval of the Call computations. During each of these telephone conferences, the plaintiff vigorously objected to the amount of the net refund identified in the Call computation, arguing that plaintiff is entitled to have his taxes computed each year on the basis of a joint filing status with two exemptions (for his wife and himself), utilizing the maximum tax rates and income averaging. The defendant, on the other hand, maintained that the net refund computations were computed on the correct filing status because 26 U.S.C. § 6013(b)(2) (1976) bars the plaintiff, at this posture, from electing the benefits of a joint return status. Subsequently, pursuant to RUSCC 34(d)(1)(B), the defendant filed, on July 2, 1985, its response to the court's call wherein it formally accepted the computations and continued to argue that plaintiff was not entitled to use joint tax rates, maximum tax rates, or income averaging.

Shortly thereafter, plaintiff filed, on July 5, 1985, his formal rejection of defendant's computations. Upon realizing that the tax liabilities and resulting refunds, etc., were computed using *single* taxpayer rates (*i.e.*, lower) though the transmittal letter indicated that they were calculated on the basis of married filing separately (higher rates), the court again held a telephone conference on July 16, 1985, to determine the defendant's position as to this dichotomy. During that telephone conference, the defendant acknowledged that the June 4th Call computations *incorrectly* utilized single tax rates but that it continued to maintain that married filing separate rates applied. In light of that revelation,[2] the court, on July 16, advised the parties that it would issue a supplemental Re-Call on the IRS. By order of July 18, 1985, the court issued another Call on the IRS requesting that plaintiff's tax liability for the taxable years 1979 and 1980 be computed on two bases, *i.e.*, married filing jointly and married filing separately, both with two exemptions, with the joint status for the 1980 tax

---

2. Both parties are now averring that the utilization of single rates was improper, plaintiff contending that married filing jointly was the correct status and defendant arguing that married filing separately was the correct status.

year to be computed using maximum tax rates. The court received the Re-Call computations on August 1, 1985, and both parties agree that given the various scenarios, the calculations are correctly computed.

For the reasons that hereinafter follow, the court concludes that plaintiff is entitled to have his 1979 and 1980 taxes computed utilizing the tax rates of a person with a status of married filing jointly with two exemptions; and that for the year 1980, plaintiff is also entitled to the benefits of the maximum tax rates. Plaintiff is not entitled to elect income averaging for either 1979 or 1980.[3] Additionally, the court concludes that plaintiff is liable for penalties pursuant to 26 U.S.C. § 6654 for failing to pay estimated taxes, and that the defendant may offset the 1980 overpayment of taxes by the underpayment in 1979.

## FACTS

On May 4, 1981, the District Director of Internal Revenue, Oklahoma City, Oklahoma, issued to plaintiff a Notice of Jeopardy Assessment and Right of Appeal. Plaintiff subsequently filed his complaint here, on January 3, 1983, after having the case transferred to this court on December 2, 1982, from the United States District Court in Oklahoma. This court tried the case in Tulsa, Oklahoma, on October 10 through 11, 1984.

At the trial, the Internal Revenue agent responsible for issuing the jeopardy assessment against plaintiff, Mr. Goodwin, testified that the jeopardy assessment that he computed on April 25, 1981, was based on taxable income attributed to plaintiff for the years 1979 and 1980. Such computations of plaintiff's unreported taxable income and tax liability were submitted into evidence as Plaintiff's Exhibit 62. Specifically, Plaintiff's Exhibit 62 consisted of five pages, which contained a summary of adjustments (i.e., unreported income) and total tax liability on Mr. Tucker for the taxa-

ble years 1979 and 1980, a computation of self-employment tax for 1979 and 1980, and an examination workpaper summary sheet for Mr. Tucker for tax years 1979 and 1980. See also Tr. 273-74. None of the pages in Plaintiff's Exhibit 62 were signed by anyone. Mr. Goodwin testified that when he prepared Plaintiff's Exhibit 62, on or about April 25, 1981, he based it on a tax status of a taxpayer who was married but filing separately. In short, Mr. Goodwin did not give plaintiff the benefit of joint return rates because no returns had been filed for such years and, as a consequence, no election(s) had been made by Mr. and Mrs. Tucker.

Turning now to Mr. Tucker's testimony at the trial, he testified that during 1979 and 1980 his wife was his dependent (Tr. 97). Additionally, Mr. Tucker testified that in 1979 his wife was not employed but rather helped out in the restaurant during that period and up until the time that it closed in 1980. Mrs. Tucker submitted a signed sworn affidavit which was received into evidence pursuant to plaintiff's post-trial motion filed June 21, 1985, which corroborated Mr. Tucker's testimony.

Plaintiff's expert, Mr. Watson, a Certified Public Accountant, also testified at the trial and stated that as long as the tax year is open, the taxpayer has the right to elect whether to file a return married filing separately or a joint return with his spouse. He explained that he prepared Plaintiff's Exhibit 61, which is a calculation of plaintiff's tax liability for 1980 only (i.e., because plaintiff contends the proof shows no taxable income for 1979), based on various scenarios. These scenarios included a tax liability if plaintiff filed separately or jointly and further turned on whether the plaintiff's or the defendant's calculation of taxable income was used. The figure used by plaintiff as his taxable income for 1980 ($20,849) emanated from Plaintiff's Exhibit 59, which was a source and application of funds (expenditure) statement for Mr.

---

**3.** Plaintiff concedes that if he is entitled to a joint filing status and maximum tax rates for 1980, he cannot also elect income averaging.

See 26 U.S.C. § 1348(a) (1976); Treas.Reg. § 1.1348–1 (1980).

Tucker for the years 1979 and 1980, computed in accordance with the plaintiff's perception of the operative evidence adduced at trial. According to Plaintiff's Exhibit 59, he accounted for all of his 1979 expenditures as having stemmed from non-taxable sources. However, for 1980, he averred that he failed to account for only $20,-848.59 in expenditures, which he consequently showed as "AGI" (*i.e.*, adjusted gross income) on Plaintiff's Exhibit 61. Mr. Watson further testified that based upon the testimony adduced at trial, the plaintiff would have filed married filing jointly for the taxes due for 1980 for the reasons that Mrs. Tucker did not work in that year.

The Internal Revenue agent, Mr. Goodwin, was recalled at the trial by the defendant as an expert summary witness. During said testimony, he identified Defendant's Exhibit 11 (which recomputed plaintiff's taxable income) as a summary statement reflective of the evidence submitted at trial based on defendant's perceptions. This time, in contra-distinction to his calculations in preparing the jeopardy assessment, Mr. Goodwin calculated plaintiff's taxable income and liability for 1979 and 1980 on the basis that Mr. Tucker was *married filing jointly with two exemptions.* Additionally, for 1980, he gave plaintiff the benefit of the maximum tax rates.

## DISCUSSION

Despite the receipt of Defendant's Exhibit 11 into evidence, which represents a summary of the opinion testimony of its expert witness, the defendant now contends that, although he vouched for the veracity of its expert witness, plaintiff is not entitled to a joint filing status. This is so because, under 26 U.S.C. § 6013(b)(2)(D) (1976) and analogous case law interpreting subsection (b)(1) of that statute, plaintiff may not now elect such status. Specifically, the defendant is now arguing that while neither the plaintiff nor the IRS on his behalf has ever made any election as to the plaintiff's filing status for the 1979 and 1980 tax years,

"whether or not a return has previously been filed, an election to file a joint return cannot [now] be made after a suit has been commenced in a district court or the Claims Court." Moreover, the defendant argues that its submission into evidence of Defendant's Exhibit 11 was a mistake, and that said mistake cannot override the statutory mandate of 26 U.S.C. § 6013(b)(2)(D). Next the defendant contends that Mrs. Tucker's affidavit is not tantamount to electing and consenting to an efficacious joint return for the taxable years 1979 and 1980; that plaintiff is not entitled to maximum tax rates because such rates apply to married individuals *only* if they file jointly; and plaintiff is not entitled to the benefits of income averaging because he has failed to show the correct taxable income for each base year period. The defendant further argues that it is plaintiff's burden to show that he qualifies under one of the exceptions exempting him from the requirement of paying estimated taxes for 1979, which he has failed to carry, and, failing such, he is liable for estimated tax penalties for 1979. Finally, while conceding that the jeopardy assessment understated plaintiff's taxable income for 1979 by $9,986.20, the defendant avers that this additional income was tried by consent of the plaintiff.

Plaintiff, on the other hand, argues that he has never filed an income tax return for 1979 and 1980 and thus all of 26 U.S.C. § 6013(b)(2) is inapplicable. That is, the limitation provisions therein against electing to file a joint return *only* applies if the taxpayer has previously filed a "separate return." Moreover, the plaintiff contends that the court should follow the testimony and documentary evidence in the record, as adduced at trial, wherein even the defendant's own agent, through Defendant's Exhibit 11, conceded that plaintiff was entitled to the status of married filing jointly. In that connection, plaintiff avers that "RUSCC 34(d)(1)(B) inherently requires that all computations submitted pursuant thereto [must] be consistent with the Court's opinion and the evidence adduced at trial." Further plaintiff argues that he had no taxable income for the taxable year

1978 and thus plaintiff owes no estimated tax penalties for 1979 because he "fits squarely within the exception found in Section § 6654(h) [sic] of the Code effective during 1979." Lastly, plaintiff argues that defendant's failure to amend its pleadings, during the entire time the matter was pending with the court (a period of approximately three years), to assert an additional deficiency for 1979 represents a waiver of any right to such deficiency as an offset against the refund due plaintiff for the taxable year 1980.

*Applicability of Section 6013(b)(2)(D)*

■ The first issue presented is whether plaintiff is barred under 26 U.S.C. § 6013(b)(2)(D) from having his 1979 and 1980 income taxes computed on the basis of joint filing rates when neither he and his wife, nor the IRS on their behalf, have filed tax returns for those years and plaintiff has filed a tax refund suit for such years in the U.S. Claims Court.

Initially, the court's analysis begins by examining the operaive statute, 26 U.S.C. § 6013, which provides, in pertinent parts, as follows:

(a) Joint Returns.

A husband and wife may make a single return jointly of income under Subtitle A. . . .

(b) *Joint return after filing separate return*

(1) In general.

*Except as provided in paragraph (2), if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse* under subsection (a) and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year. . . .

(2) Limitations for making of election.

*The election provided for in paragraph (1) may not be made—*

(A) unless there is paid in full at or before the time of the filing of the joint return the amount shown as tax upon such joint return; or

(B) after the expiration of 3 years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse); or

(C) after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213; or

(D) *after either spouse has commenced a suit in any court for the recovery of any part of the tax for such taxable year;* . . . (Emphasis added.)

In the absence of a contrary instruction, we must assume, when construing the Internal Revenue Code, that Congress intended to convey the ordinary meaning which is attached to the language it used. *Jones v. Liberty Glass Co.,* 332 U.S. 524, 531, 68 S.Ct. 229, 233, 92 L.Ed. 142 (1947). Subparagraph (a), *supra,* simply provides that husband and wife may make a return jointly. From the patently clear meaning of the foregoing words, we read this provision to relate to the *initial* filing, whenever made, and the only statutory prerequisite to such status is that the taxpayers are "husband and wife." In Revenue Ruling 72–539, 1972–2 C.B. 634, 635, the Service has ruled that while section 6013(b)(2)(B) of the Code provides a limitation, as delineated therein, on the election to file a joint return after a separate return has previously been filed,—

this does not preclude an election to file a joint return *for the first time.*

Accordingly, . . . the taxpayers may file a joint return even though the period of limitation for electing to change from separate returns to a joint return has expired, *since no returns have been filed for the year in question.* (Emphasis added.)

Subparagraph (b)(1) of section 6013, *supra*, provides that when the five limitational impediments of subparagraph (b)(2) do *not* apply, "if an individual has filed a separate return for a taxable year for which a joint return could have been made ... such individual and his spouse may nevertheless make a joint return for such taxable year." Thus, it seems clear beyond cavil that Congress intended subparagraph (a) to provide the standard for filing a joint return when, as here, no previous return of any kind has been filed for such year, and subparagraph (b) delineates the criteria for the filing of a joint return *only after* the filing of a "separate return" for such year. Although there may be some debate as to what is a "separate return," *see Glaze v. United States*, 641 F.2d 339 (5th Cir.1981); *compare* Revenue Ruling 83–183, 1983–2 C.B. 220, it is clear on these facts that no *previous* return (Form 1040), *i.e.*, separate as contemplated by § 6013(b), has been filed by Mr. Tucker, Mrs. Tucker, or the IRS on their behalf for the taxable years in question.[4] Since section 6013(b)(1) cannot be invoked without the previous filing of an initial separate return, *a fortiori*, the exceptions to the application of section 6013(b)(1) found in (b)(2) do not apply to the entitlement of taxpayers to file a joint return under section 6013(a) where, as here, no return of any kind has been *previously* filed for the taxable years 1979 and 1980. This reading of section 6013(b), which we view as most logical, is thoroughly consistent with the interpretation espoused by the IRS in its Revenue Rulings 72–539, 1972–2 C.B. 634 and 83–183, 1983–2 C.B. 220.

The defendant's reliance on *Conovitz v. Commissioner*, 39 T.C.M. (CCH) 929 (T.C. 1980), where "substitute" § 6020(b) separate returns were previously prepared by the Service on behalf of the petitioner is misplaced. There, in *Conovitz*, the petitioner did not timely file his income tax return for 1973 or 1974. An office auditor for respondent, therefore, acting under § 6020(b), prepared substitute returns on behalf of the petitioner for 1973 and 1974. As the court discussed in *Conovitz:*

> These returns contained the name, New York address and social security number of petitioner. Aside from these details, the remainder of each such return was not completed. However, these returns were prepared at the same time and in conjunction with Forms 1902–E, which set forth items of petitioner's gross income (wages) and allowed the standard deduction as well as a single exemption for petitioner. These substitute returns and the corresponding Forms 1902–E were processed together by the I.R.S. and a deficiency was determined upon the basis thereof. *Id.* at 930.

Subsequent to the mailing of the deficiency determination, petitioner in *Conovitz* "filed" what purported to be his 1973 and 1974 income tax returns with his wife. *Id.* The court held that the substitute returns prepared by the office auditor under the authority of § 6020(b)(1) was a separate return upon which the limitations of § 6013(b)(2) applied precluding a § 6013(b)(1) *joint return election.*

■ The significant distinction (between subject case and *Conovitz*) is that Mr. Goodwin, the Internal Revenue agent, did *not* prepare a substitute return pursuant to 26 U.S.C. § 6020(b) as the office auditor did in *Conovitz*, and the defendant concedes this fact. (*See* fn. 4.) In contra-distinction to the case at bar, neither plaintiff's address nor his social security number is listed in Plaintiff's Exhibit 62, nor did Mr. Goodwin utilize Form 1902–E as was used in *Conovitz*. Moreover, the Notice of Jeopardy Assessment issued to plaintiff did not mention that the IRS had prepared a substitute return for Mr. Tucker. And, Mr. Goodwin did not, nor did anyone else from IRS, subscribe to Exhibit 62 as required by § 6020(b)(2)[5] in order to make a substitute

---

4. In fact, in a memorandum filed on July 22, 1985, the defendant conceded that "[w]e are not contending that any election as to filing status

has ever been made, either by plaintiff or by the Internal Revenue Service on his behalf."

5. I.R.C. § 6020:

return "prima facie good and sufficient for all legal purposes." Rather, Exhibit 62, is simply a summary of jeopardy adjustments contained in the underlying revenue agent's workpapers reflecting the total tax liability for each of the ·years 1979 and 1980. The court therefore finds that Exhibit 62, without a subscription by the Secretary and other appropriate indicia, is not a substitute return prepared pursuant to § 6020(b), and thus *Conovitz* gives defendant no comfort.[6] *Cf. National Contracting Co. v. Commissioner*, 37 B.T.A. 689, 696–698 (1938), *aff'd*, 105 F.2d 488 (8th Cir.1939); *Commissioner v. Church*, 103 F.2d 254, 255 (3d Cir.1939).

To the extent the defendant relies on *Durovic v. C.I.R.*, 487 F.2d 36, 42 (7th Cir.1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974), which holds that the limitations of § 6013(b)(2)(B) apply to preclude the *initial* election to file a joint return even though the taxpayer did *not* originally file separate returns, this court thoroughly disagrees for several reasons. Because this court is not constrained to follow the Seventh Circuit, and since we have misgivings as to its holding, we respectfully choose not to follow *Durovic*. First, we observe that *Durovic* places inordinate weight on the election the Commissioner made for the taxpayer in the deficiency notice, however, there is no showing that that election satisfied the requirements of 26 U.S.C. § 6020(b). Secondly, *Durovic* is totally inconsistent with Revenue Ruling 72–539, 1972–2 C.B. 634, which is on point and clearly permits a joint return election under § 6013(a) where original separate returns were never filed, de-

spite the fact that *more* than three years have passed since the filing due date of the original return. Third and finally, *Durovic* is inconsistent with the plain reading of the statute (§ 6013(b)(1) and (2)) which only applies "if an *individual has filed* a separate return for a taxable year for which a joint return could have been made by him...." (Emphasis added.)

The court recognizes that it appears that several Tax Court opinions have followed *Durovic* (*see e.g., Hogge*, 53 T.C.M. (P–H) ¶ 84,129 (1984); *Smalldridge*, 53 T.C.M. (P–H) ¶ 84,434 (1984)); however, we are not aware of, nor has the defendant cited to, any cases where section 6013(b)(2)(D) has been held to apply to a tax refund suit when no return for the tax years in issue had been filed by either the taxpayer, or the Commissioner under 26 U.S.C. § 6020(b), prior to the commencement of the court action. Nor does the legislative history of section 6013(b) indicate that said statutory provision was intended to apply in a no initial separate return situation. Rather, the statute, as originally contained in the Revenue Act of 1951, was enacted simply to enable married persons to correct elections originally made in the absence of "informed tax knowledge not possessed by the average person" because, under prior law, the election to file as individuals or jointly, once made, was binding. S.Rep. No. 781, 82nd Cong., 1st Sess. (1951), reprinted in U.S.Code Cong. & Ad.News 1969, 2018. We are constrained to conclude, therefore, that section 6013(b)(2)(D) does not bar the plaintiff from receiving the benefits of joint tax rates in computing his 1979 and 1980 taxes (assuming, of

---

(b) Execution of return by Secretary.
 (1) Authority of Secretary to execute return.
If any person fails to make any return ... required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
 (2) Status of returns.
Any return so made *and subscribed by the Secretary* shall be prima facie good and suffi-

cient for all legal purposes. (Emphasis added.)

**6.** While the court is aware that at the trial Mr. Goodwin, in response to plaintiff's counsel's questions, acknowledged that he prepared a return for the plaintiff when Mr. Goodwin filed the jeopardy assessment (*see* Tr. 288), the court believes that the determination of whether Plaintiff's Exhibit 62 is a "substitute return" within the contemplation of § 6020(b) is a legal question for the court to decide.

course, that the record is sufficiently probative of his entitlement to joint return rates for each year in issue pursuant to § 6013(a)).

*Joint Return Election*

■ The second issue presented, in determining the net refund due, is whether the court can determine the plaintiff's tax liability for 1979 and 1980 on the basis of joint tax rates, given the evidence in the record so supporting. Such evidence shows that the taxpayer and his spouse have filed neither a *previous* separate nor a joint return for those years.

The defendant maintains, relying on *Dritz v. Commissioner*, 28 T.C.M. (CCH) 874, 880, *aff'd*, 427 F.2d 1176 (5th Cir.1970), and its progeny that the benefits of joint rates can only be obtained by the filing of a joint return and, since plaintiff has never filed a joint return, he is not entitled to use joint return rates. Plaintiff, while admitting that "neither he nor his wife [actually] filed an income tax return for the years 1979 and 1980," argues that "RUSCC 34(d)(1)(B) inherently requires that all computations submitted pursuant thereto be consistent with the Court's opinion and the evidence adduced at trial."

Premised on the total record,[7] it is clear to this court that the evidence supports the finding that the plaintiff's tax liability each year and respective deficiency and refund (1979 and 1980) *should* be computed by utilizing joint return rates. Initially, plaintiff's litigating position, as evidenced in his complaint, was that he had no gross income for 1979 and 1980 and he therefore was not required to file individual income tax returns for such years. At the trial, plaintiff continued to contend that he had no gross income for 1979 inasmuch as all expenditures for such year were explained by nontaxable sources. Thus, plaintiff entered no exhibits into evidence purporting to calculate any 1979 gross and taxable income and tax liability utilizing joint rates. None-theless, the defendant submitted its Exhibit 11 into evidence which showed, based on its contentions, that for 1979 the plaintiff had unreported taxable income in 1979 in the amount of $28,986.20. Defendant's Exhibit 11 was prepared by Revenue Agent Goodwin, who computed the resulting tax liability by using the rates applicable to a taxpayer who was *married filing jointly*. And when testifying, Revenue Agent Goodwin unequivocally stated that, based on the evidence in the record, the plaintiff was entitled to file a joint return with his wife for the tax years in issue. In view of the foregoing, plaintiff strenuously argues that Defendant's Exhibit 11 simply concedes the ultimate fact and that this court should rely on it as the predicate for using joint rates in the 1979 tax computations.

Looking at the documentary evidence pertaining to the income and tax computation for 1980, Plaintiff's Exhibit 61 shows that plaintiff received adjusted gross income in the amount of $20,849. In said exhibit plaintiff claimed two exemptions and calculated his tax liability on the basis of a taxpayer who was married filing jointly. On the same exhibit, he also used the taxable income figure the IRS attributed to plaintiff, $270,971, and recomputed his tax liability claiming two exemptions, and using joint filing status and maximum tax rates. Such documented calculations in the aggregate certainly provide sufficient information to compute plaintiff's 1980 tax liability and clearly indicate that plaintiff intended to make a joint return election. There is no serious question in this regard particularly in view of Mrs. Tucker's supporting affidavit. In her affidavit, Mrs. Tucker stated that:

> During the period January 1, 1979 through December 31, 1980, I was legally married to and resided with Clinton D. Tucker as his wife.
>
> I did not file a separate federal income tax return for the tax years 1979 or 1980.

---

7. On June 21, 1985, there was filed in this court Plaintiff's Motion To Reopen The Record "for the limited purpose of receiving into evidence an affidavit by Dorothy Tucker, the wife of plaintiff, which supports [their] right to file a joint ... return for the years 1979 and 1980." This motion was granted.

I did not have any income for the tax year 1979 or 1980.

For the tax years 1979 and 1980 I was not claimed as a dependent on any federal income tax return to the best of my knowledge and belief.

I hereby consent to and join with Clinton D. Tucker in the filing of a "Joint Federal Income Tax Return" for the tax years 1979 and 1980.

Thus, all the documentary and testimonial evidence in the record supports a finding that the plaintiff is entitled to the benefits of joint rates, in particular defendant's concession implicit in Defendant's Exhibit 11 and related testimony. Also see Plaintiff's Exhibits 59, 61, and 65. In fact, there is nothing in the record of a creditable nature supportive of a contrary finding.

Defendant relies heavily on *Dritz*, 28 T.C.M. (CCH) 874, 880, *aff'd*, 427 F.2d 1176 (5th Cir.1970), for the proposition that "the election of a joint computation by any other method than the 'making of a return,' as provided in section 6013 was never intended by Congress, and cannot be permitted." A close reading of the Fifth Circuit's *per curiam* opinion affirming the Tax Court, reveals that in *Dritz* the record was barren of probative evidence of the taxpayer's intent to file joint returns. The Fifth Circuit highlighted the fact that Max Dritz did not testify and that Mrs. Dritz's testimony was evasive, inconsistent and generally implausible. 427 F.2d at 1176. Moreover, the Tax Court decision discloses that the Dritzs attempted to elect joint rates there by filing amendments to their petition at the end of the trial. Here, Mr. Tucker did testify and Mrs. Tucker submitted an affidavit, electing a joint status. More importantly, and contrary to *Dritz*, the defendant offered documentary evidence conceding Tucker's entitlement to joint rates for both taxable years.

In conclusion, the requirement in *Dritz* that there be a "making of a return" as a condition to entitlement to joint rates only begs the question. Rather, under these particular and peculiar facts and circumstances, we view the question of whether a joint return is made "depends on the facts of the case and the taxpayer's intent." *Martin v. United States*, 411 F.2d 1164, 1168 (8th Cir.1969); *see also Estate of Upshaw*, 416 F.2d 737, 742–43 (7th Cir.1969), *cert. denied*, 397 U.S. 962, 90 S.Ct. 993, 25 L.Ed.2d 254 (1970). Here all of the operative facts support the ultimate conclusion that Mr. and Mrs. Tucker intended, to the extent the court found Mr. Tucker to have received taxable income for 1979 and 1980, that any resulting tax liability emanating from that income should be computed by utilizing joint rates. Additionally, whereas here plaintiff contends that he was not required to file *any* returns for the years in issue, to the extent that income is shown we conclude that the documentary evidence in the aggregate, coupled with the concession of defendant, supports a finding that at the very least a tentative return (Reg. § 31.6011(b)(1)) has been made out entitling him to joint return rates.

*Maximum Tax Rates and Income Averaging*

We next focus on two issues—whether plaintiff is entitled to have his 1979 and 1980 income taxes computed using the maximum tax rates and the income averaging provision.

For the 1979 tax year, plaintiff's taxable income was too low to implicate the use of maximum tax rates. On the other hand, however, for the 1980 tax year, we find that because plaintiff is entitled to have his income calculated on the basis of joint return rates, he may also have the benefit of the maximum tax rates. 26 U.S.C. § 1348(c) (1976). Treas.Reg. § 1.1348–1 (1980). Regardless of the foregoing, plaintiff is not entitled to the benefits of income averaging for 1980, as even he himself concedes that he cannot elect income averaging concomitantly with the election of joint and maximum tax rates. 26 U.S.C. § 1348(a) (1976); Treas.Reg. § 1.1348–1 (1980).

■ Since plaintiff is not utilizing the maximum tax rates for the 1979 tax year, the impediment to the use of income averaging regarding the 1980 taxable year does

not obtain with respect to the 1979 taxable year. Regarding the 1979 tax year, plaintiff has introduced no prior year returns or other documentary evidence to support his entitlement to income averaging under 26 U.S.C. § 1301 (1976). At the trial, the plaintiff stipulated that (1) during the taxable years 1965 through 1978, his gross income was sufficient to require him to file federal income tax returns, and (2) that he did not file such federal income tax returns during these years. Tr. 135. Without income tax returns from plaintiff indicating what his *taxable income* was for the years 1975 through 1978, he has not met even the bare minimum requirements needed to determine his entitlement to the benefits of income averaging. Plaintiff is therefore not entitled to have his 1979 taxable income computed by utilizing income averaging.

*Estimated Tax Penalties for 1979*

Pursuant to 26 U.S.C. § 6654(a) (1976), the defendant, in its initial Call computation, imposed estimated tax penalties against the plaintiff because of his failure to pay any estimated taxes under 26 U.S.C. § 6015 (1976)[8] for the 1979 tax year, despite his gross income of $28,986.20 as found by the court. *See Tucker v. United States*, 8 Cl.Ct. 180 (1985). The plaintiff argues that he is not liable for such penalties because he "fits squarely within the exception found in Section § 6654(h) [sic] of the Code (effective during 1979) for the year 1979 as plaintiff had *no* tax liability for the year 1978." Defendant, in turn, contends that plaintiff has failed to carry his burden that he had no tax liability for 1978.

Our research of this issue reveals that contrary to the positions of the parties, the history of § 6654(h) discloses that the exception with respect to which plaintiff embraces (now found at subsection

(e)(2) of § 6654) was not enacted until 1982 and became effective for tax years beginning after December 31, 1982.

Section 6654(h) of the Internal Revenue Code of 1954, as originally enacted, relating to the applicability of section 6654 read:

(h) Applicability.

This section shall apply only with respect to taxable years beginning after December 31, 1954; and section 294(d) of the Internal Revenue Code of 1939 shall continue in force with respect to taxable years beginning before January 1, 1955.

Subsequently, the Tax Reform Act of 1976 amended section 6654(h), 26 U.S.C. § 6654 (1970), "by striking out subsection (h)." Tax Reform Act of 1976, Pub.L. No. 94–455, § 1906(a)(35), 90 Stat. 1520, 1829 (codified as amended at 26 U.S.C. § 6654 (1976)). On September 3, 1982, as part of the Tax Equity and Fiscal Responsibility Act, subsection (h), as relied upon by the plaintiff, was enacted, and became effective for tax years beginning after December 31, 1982. Thus, section 6654(h) then read:

(h) Exception where no tax liability for preceding taxable year

No addition to the tax shall be imposed under subsection (a) for any taxable year if—

(1) the individual did not have any liability for tax for the preceding taxable year,

(2) the preceding taxable year was a taxable year of 12 months, and

(3) the individual was a citizen or resident of the United States throughout the preceding taxable year.

26 U.S.C. § 6654(h) (1982). In 1984, the foregoing new section 6654(h) was redesignated I.R.C. § 6654(e)(2), as it presently appears in the Code, by the Deficit Reduction Act. *See* Deficit Reduction Act of

---

**8.** 26 U.S.C. § 6015(a) (1976), provides, in pertinent part, that:

[E]very individual shall make a declaration of his estimated tax for the taxable year if—

(1) the gross income for the taxable year can reasonably be expected to exceed—

(A) $20,000, in the case of ... (ii) a married individual entitled under subsection (b) to file a joint declaration with his spouse, but only if his spouse has not received wages ... or ...

(2) the gross income can reasonably be expected to include more than $500 from sources other than wages....

1984. Pub.L. No. 98–369, § 411, 98 Stat. 494, 788 (codified as amended at 26 U.S. C.A. § 6654(e)(2)) (West Supp.1985). Consequently, because the section 6654(h) exception plaintiff relies on did not obtain to the 1979 tax year and plaintiff had taxable income in such year of over $28,000 on which he paid no estimated taxes, plaintiff is liable for appropriate estimated tax penalties.

*1979 Offset*

Finally, the last issue raised by plaintiff in opposition to the Call computation is whether the defendant can offset an additional 1979 tax deficiency, not raised in the jeopardy assessment but tried in the refund suit, against the 1980 overpayment. Originally, the jeopardy assessment was based on the IRS attributing to plaintiff $19,000 in "unreported income" for the 1979 taxable year. (Plaintiff's Exhibit 61.) However, at the trial, the evidence adduced established and the court so found that plaintiff had $28,986.20 in unreported income for the taxable year 1979. *See Tucker v. United States*, 8 Cl.Ct. 180 (1985). The $9,986.20 differential in income for 1979 is due to the fact that the defendant originally included in the 1980 tax year two wire transfers each in the amount of $4,993.10, which were actually made on November 28 and December 17, 1979, and thereby found by the court to represent taxable income in 1979 rather than in 1980. *See* Plaintiff's Exhibit 63. Defendant now requests, pursuant to RUSCC 15(b), in its Motion To Amend Pleadings To Conform To The Evidence, that plaintiff's additional income for 1979 in the amount of $9,986.20 be treated as if it had been raised in its pleadings. The defendant argues that while the taxable income per jeopardy assessment ($19,000) did not include the two wire transfers aggregating $9,986.20 as 1979 income, the issue of whether the additional income found by the court constituted taxable income for such year was tried by implied, if not by express, consent of the plaintiff. (*See* Partial Stipulation of Facts, Joint Exhibit 6; Plaintiff's Exhibits 16 and 19; and Plaintiff's Pretrial Schedule of Ex-

hibits, September 28, 1984.) Additionally, the defendant points out the fact that even the parties themselves had stipulated (Stip. 11–14) that plaintiff transferred a total of $28,986.20 to Anguilla Sea Products, Ltd. during 1979.

On the other hand, plaintiff contends that defendant's failure to amend its pleadings and assert the additional 1979 deficiency during the entire time this matter was pending with the court represented a waiver of any right to such a deficiency. Thus, the plaintiff maintains that the defendant is estopped by reason of its waiver from asserting an additional liability and, more importantly, from offsetting the unasserted liability against plaintiff's overpayment for the year 1980. Furthermore, the plaintiff alleges that the subject offset is unlawful under the provisions of § 6402(d) of the Code because the 1979 deficiency is not a "past-due legally enforceable debt."

The court observes that RUSCC 15(b) provides, in pertinent part, that:

> When issues not raised by the pleadings are tried by *express or implied consent* of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues *may be made upon motion of any party at any time*, even after judgment; but failure to so amend does not affect the result of the trial of these issues. (Emphasis added.)

■ The Court of Claims in interpreting Rule 39(b) which was substantially identical to RUSCC 15(b), stated that such rule should be liberally construed. *Hess v. United States*, 210 Ct.Cl. 483, 491, 537 F.2d 457, 461 (1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). Moreover, "[m]ere delay is insufficient to bar amendment of the pleadings..." *Id.* Plaintiff, as evidenced by his stipulation, well knew *prior* to trial that there was $28,986.20 in transfers in 1979 which he would have to account for as arising out of non-taxable rather than taxable sources.

Plaintiff made no objections at the trial to the receipt in evidence of the documentation supporting these transfers. And, more importantly, the record does not reveal any prejudice or surprise to the plaintiff, nor does he so allege. Thus, defendant's motion to have its pleading reflect the evidence at trial is granted.

To the extent plaintiff contends that section 6402(d) should apply, it is sufficient to say that that subsection applies to refunds payable *after* December 31, 1985, and thus is inapplicable to the case at bar. *See* Pub.L. 98–369, 2653(b)(2), 98 Stat. 1154–1156. Instead, 26 U.S.C. § 6402(a) (1982) appears to obtain here, which states that:

> In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against *any* liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall ... refund any balance to such person. (Emphasis added.)

In its prior opinion, the court has found plaintiff liable for unpaid income taxes. Plaintiff's reliance on *Close v. United States*, 218 Ct.Cl. 744 (1978), is misplaced. In *Close*, unlike here, the court was presented with no evidence of a prior liability from which to offset against the taxpayer's requested refund. Here, it is clear that plaintiff is liable to the government for taxes he has yet to pay on $9,986.20 of his 1979 income. Therefore, the defendant may properly offset the 1979 tax deficiency plus interest and penalties against the 1980 refund due plaintiff. *Daugherty v. United States*, 1 Cl.Ct. 216 (1983).

## CONCLUSION

The conclusion reached by this court to the effect that, on these peculiar facts, plaintiff is entitled to joint return rates for the taxable years 1979 and 1980 stems primarily from the following critical facts— the defendant admittedly failed to make a valid § 6020(b) election (married filing separately) on behalf of the taxpayer; Defendant's Exhibit 11 conceded plaintiff's entitlement thereto; plus the additional probative evidence discussed hereinabove.

In view of the foregoing, plaintiff's tax liability for each of the taxable years 1979 and 1980 shall be computed on the basis of a married taxpayer filing jointly; maximum tax rates are applicable for the taxable year 1980; plaintiff is not entitled to income averaging regarding any taxable year; the estimated tax penalty is duly applicable regarding the 1979 taxable year; and defendant may offset the 1980 overpayment by the 1979 deficiency. Consistent with the foregoing opinion, the Clerk shall enter a judgment in favor of plaintiff for a 1980 tax refund in the net amount of $158,396.28.

IT IS SO ORDERED.