**Philip S. MORGAN,**
**Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 85–1396.

United States Court of Appeals,
Sixth Circuit.

Submitted on Briefs July 21, 1986.

Decided Dec. 16, 1986.

Philip S. Morgan, Canton, Ohio, for petitioner-appellant.

Fred T. Goldberg, Jr., I.R.S., Chief Counsel, Michael L. Paup, Glenn L. Archer, Jr., Tax Div., Dept. of Justice, Washington, D.C., Roger M. Olsen, William S. Estabrook, Martha B. Brissette, for respondent-appellee.

Before WELLFORD and MILBURN, Circuit Judges, and DeMASCIO, District Judge.*

WELLFORD, Circuit Judge.

This is an appeal from a decision of the Tax Court, T.C. Memo 1984–384, which held that certain Forms 1040 filed by Morgan, the taxpayer-appellant, did not qualify as federal income tax returns, that attempted elections by Morgan to file joint returns at a later time were ineffective, and that certain penalties and additions to the taxes determined to be due were appropriate because mitigation provisions did not apply under the circumstances. We affirm.

## A. Background

■ Respondent-appellee Commissioner determined deficiencies in income tax plus additions to the tax pursuant to 26 U.S.C. section 6651(a)(1) (1982) (failure to file timely tax returns), section 6653(a) (negligence penalty), and section 6654(a) (underpayment of estimated tax) for each of the years 1973 through 1979, inclusive. The tax court first determined that the statute of limitations did not bar assessment of income taxes, and additions thereto, for the years 1973 through 1976, inclusive.[1] We agree with the Commissioner that the purported Forms 1040 filed by taxpayer did not constitute tax returns as required by law and thus did not trigger the running of the limitations period of section 6501 of the Internal Revenue Code. We agree with the Commissioner also that the assessments and deficiencies finally ascertained for the tax years 1973 through 1976 are not barred.

■ Morgan asserts that the Tax Court had no jurisdiction to hear this dispute, but he did not pay the disputed taxes nor otherwise attempt to meet the conditions for contesting the I.R.S. deficiency assessments for the years in question in order to contest the I.R.S. determinations in a federal district court. His only avenue to dispute these assessments judicially, therefore, was in the Tax Court, which clearly had jurisdiction of this dispute. Taxpayer, moreover, is in no position to contest jurisdiction in the very tribunal in which he sought relief from the deficiency assessments made against him by the I.R.S. Taxpayer is simply wrong in his jurisdictional assertion. He cites no authority for his assertion that "the U.S. Tax Court cannot hear, adjudicate nor protect any issue 'at law' or [sic] constitutional rights." Furthermore, we dismiss out of hand appellant's unsupported and self-serving assertions that he was not provided an "impar-

---

* The Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Appellant did not address this issue directly either in his brief or oral argument.

tial judge" nor a "fair hearing based on law and the facts" in the Tax Court.

## B. Were the Forms 1040 lawful tax returns?

■ The Tax Court findings about the forms filed by Morgan are not contested:

In April 1977, petitioner and his wife sent to respondent Forms 1040 for 1973, 1974, 1975, and 1976. Each of these Forms shows petitioner's and his wife's address, taxpayer identification numbers, and occupations ("empl. counselor" for petitioner, "housewife" for his wife). On each of these Forms, petitioner and his wife claim the status of married filing jointly, and claim one personal exemption apiece (for a total of two exemptions). Each of these Forms was signed by petitioner and his wife under penalties of perjury. Each of the other lines on each of these Forms is stamped with the legend "OBJECT 5TH AMEND." Attached to each of these Forms is a six-page "letter of explanation" dealing with the Fifth Amendment to the Constitution, and three one-page documents.

In April 1978, petitioner and his wife sent to respondent a Form 1040 for 1977, which contains the same information, objections, attachments, etc., as appear on the Forms 1040 for 1973, 1974, 1975, and 1976.

In April 1979, petitioner sent to respondent a Form 1040 for 1978, which contains the same information, objections, attachments, etc., as appear on the Forms 1040 for 1973 through 1977, except for the following: petitioner's wife's name, taxpayer identification number, occupation, and signature do not appear on the 1978 Form; *the indicated filing status on the 1978 Form is married filing separate return;* the amount of withholding tax does not appear on the 1978 Form, and the "letter of explanation" attached to the 1978 Form is only five pages long.

In April 1980, petitioner sent to respondent a Form 1040 for 1979, which contains the same information, objections,

attachments, etc., as appear on the 1978 Form 1040, except that the 1979 Form shows petitioner's occupation as "data proc" and his wife's occupation as "housewife".

*Morgan v. CIR,* T.C. Memo 1984–384, at 4–5 (emphasis added.)

We find no error in the Tax Court's conclusion that the forms filed by Morgan do not qualify as tax returns under the applicable law. *See United States v. Heise,* 709 F.2d 449 (6th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 285, 78 L.Ed.2d 262 (1983). None of the forms filed as reflected in the findings cited above for the years 1973 through 1979 contain sufficient required information to be treated as lawful tax returns. The claim of fifth amendment privilege does not justify Morgan's refusal to supply the requisite data on the Forms 1040 involved. *Id.* at 450–51. To constitute a valid return, Form 1040 must reflect a reasonable disclosure of gross income, deductions, and resulting net taxable income. *Durovic v. Commissioner,* 487 F.2d 36, 40 (7th Cir.1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974).

## C. Imposition of Penalties and Additions to Tax.

■ Morgan claims that because of his involvement in extensive litigation during the years in question, his preoccupation with these problems, and his belief that his claimed constitutional privilege would prevent assessment of penalties and additions to tax against him, the penalties asserted against him under sections 6651, 6653, and 6654(a) were improper. The claims and contentions of Morgan, including his fear of putting himself in jeopardy if he filed returns, are no basis whatever to avoid the imposition of each of these statutory additions to the tax found to be due. The Tax Court, therefore, was correct in approving these additional deficiency assessments.

## D. Joint Return Election

■ The remaining and only difficult issue in this case involves the Tax Court's

decision that assessment of taxes in each of the years 1973 through 1977 should be made on the basis of rates applicable to a married taxpayer filing separately rather than the more favorable joint return basis sought by appellant. The determinative ruling of the Tax Court was:

> [P]etitioner and his wife cannot elect to use the section 1(a) tax rate schedule [for joint returns] by executing and sending to respondent tax returns after the notice of deficiency is mailed and petitioner has filed a petition with this Court. Section 6013(b)(2)(c); *Thompson v. Commissioner*, 78 T.C. [558] at 561 [ (1982) ]; see *Durovic v. Commissioner*, 54 T.C. 1364, 1401–1402 (1970), aff'd on this issue 487 F.2d 36, 41–42 (CA7 1973).

*Morgan*, T.C. Memo. 1984–384, at 7 (footnote omitted.) As a consequence, the Tax Court denied the attempted joint return elections sought by Morgan (and his wife) based on Forms 1040 filed on the advice of counsel in February, 1984, after deficiency notices had issued. *See also Reiff v. Commissioner*, 77 T.C. 1169, 1177 n. 14 (1981).

The Commissioner and the Tax Court rely on 26 U.S.C. section 6013,[2] and its interpretation in *Durovic*, 487 F.2d at 42. The problem with this position is that section 6013 arguably applies only in the situation in which the husband and/or wife had first filed a return claiming a separate taxpayer status. *Durovic*, however, held that the limitation of section 6013 applied in a case in which the husband and wife had not timely filed a separate return and subsequently the Commissioner determined a deficiency based on the separate return basis rather than on a joint return basis.

A later decision involving a similar question, however, took a somewhat different tack. In *Glaze v. United States*, 641 F.2d 339 (5th Cir. Unit B 1981), the deceased taxpayer's personal representative filed a *single* status return. After court proceedings later established a common law marriage status, more than three years after the original return was due, the taxpayer's representative refiled claiming a joint return status with the common law wife. The *Glaze* court analyzed the purpose and legislative intent of section 6013:

> It is clear that Section 6013 was enacted as a matter of legislative grace to permit married taxpayers to escape the adverse financial consequences resulting from an injudicious election to initially file separate returns rather than a single joint return. The Senate Report states that proper elections frequently require informed tax knowledge not possessed by the average person, and, hence, the previously binding nature of the election sometimes resulted in the payment of substantially excessive taxes. Thus, the Code was amended to provide that "married individual income taxpayers who file *separate* returns may exercise the right to change their *election* and file joint returns at any time within the period of the statute of limitations." (Emphasis added). Sen.Rep. No. 781, 82d Cong., 1st

---

2. The statute provides in part:

(a) **Joint returns.**—A husband and wife may make a single return jointly of income under subtitle A, ...

(b) **Joint return after filing separate return.—**

(1) **In general.**—Except as provided in paragraph (2), if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse under subsection (a) and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year....

(2) **Limitations for making of election.**—The election provided for in paragraph (1) may not be made—

(A) unless there is paid in full at or before the time of the filing of the joint return the amount shown as tax upon such joint return; or

(B) after the expiration of 3 years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse); or

(C) after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213;....

26 U.S.C. § 6013 (1980).

Sess., *reprinted in* [1951] U.S.Code Cong. & Ad.News 1969, 2018.

The above-quoted statement from the Senate Report highlights the critical requisite governing the applicability of Section 6013 which is missing in the case *sub judice*—the section requires a previous *election* by a married person to file a *separate* return. That this is a foundational threshold to any application of Section 6013 is apparent from the language contained in the statute itself, the regulations, the legislative history and even the appellant's brief.

In the absence of some contrary indication, courts construing the Internal Revenue Code must assume the authors intended the words used to be accorded their ordinary meaning. *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531, 68 S.Ct. 229, 232, 92 L.Ed. 142, 148 (1947), *rehearing denied*, 333 U.S. 850, 68 S.Ct. 657, 92 L.Ed. 1132 (1948). Use of the word "separate" can only be deemed to refer to the filing status of "married, filing separately." The term "election" embodies the notion of choice. A reading of Section 6013(b)(1) and Section 6013(b)(2) leads to only one inference, i.e., the section is applicable only to the situation where a married taxpayer has made an election to file a separate (not "single") return and later decides that he/she wants to revoke that choice.

*Id.* at 342 (footnotes omitted).

The *Glaze* court held that since there had not been an election to file as a married person, reporting separately, and since the corrected return had been filed within the requisite period of section 6511, section 6013 was inapplicable and the taxpayer could properly file and claim taxes to be assessed on the more favorable married joint return rates. The court further concluded, however:

To constitute an effective election to file an amended joint return subsequent to an initial election to file a separate return, the joint return must actually be filed within the period prescribed by Section 6013(b)(2). Although this is undenia-

bly true, it is irrelevant to the instant case where there was never an initial election to file a separate return.

*Id.* at 343. This latter language was dicta since the court had first decided that there was no valid initial election made. In the instant case, the Commissioner determined, and we have agreed with the Tax Court's approval of that determination, that the initial forms filed by Morgan in a timely fashion did not constitute valid returns. Any purported election attempted to be asserted in these returns was presumably similarly ineffective.

Still a later case considered the applicability and interpretation of section 6013:

Subparagraph (a) [of § 6013], *supra,* simply provides that husband and wife may make a return jointly. From the patently clear meaning of the foregoing words, we read this provision to relate to the *initial* filing, whenever made, and the only statutory prerequisite to such status is that the taxpayers are "husband and wife". In Revenue Ruling 72–539, 1972–2 C.B. 634, 635, the Service has ruled that while section 6013(b)(2)(B) of the Code provides a limitation, as delineated therein, on the election to file a joint return after a separate return has previously been filed,—

this does not preclude an election to file a joint return *for the first time.*

Accordingly, . . . the taxpayers may file a joint return even though the period of limitation for electing to change from separate returns to a joint return has expired, *since no returns have been filed for the year in question.* (Emphasis added.)

Subparagraph (b)(1) of section 6013, *supra,* provides that when the five limitational impediments of subparagraph (b)(2) do *not* apply, "if an individual has filed a separate return for a taxable year for which a joint return could have been made . . . such individual and his spouse may nevertheless make a joint return for such taxable year." Thus, it seems clear beyond cavil that Congress intended subparagraph (a) to provide the standard for

filing a joint return when, as here, no previous return of any kind has been filed for such year, and subparagraph (b) delineates the criteria for the filing of a joint return *only after* the filing of a "separate return" for such year. Although there may be some debate as to what is a "separate return," *see Glaze v. United States,* 641 F.2d 339 (5th Cir. 1981); *compare* Revenue Ruling 83–183, 1983–2 C.B. 220, it is clear on these facts that no *previous* return (Form 1040), *i.e.,* separate as contemplated by § 6013(b), has been filed by Mr. Tucker, Mrs. Tucker, or the IRS on their behalf for the taxable years in question. Since section 6013(b)(1) cannot be invoked without the previous filing of an initial separate return, *a fortiori,* the exceptions to the application of section 6013(b)(1) found in (b)(2) do not apply to the entitlement of taxpayers to file a joint return under section 6013(a) where, as here, no return of any kind has been *previously* filed for the taxable years 1979 and 1980. This reading of section 6013(b), which we view as most logical, is thoroughly consistent with the interpretation espoused by the IRS in its Revenue Rulings 72–539, 1972–2 C.B. 634 and 83–183, 1983–2 C.B. 220.

*Tucker v. United States,* 8 Cl.Ct. 575, 580–81 (1985) (footnote omitted) (emphasis original).

*Tucker* "thoroughly disagrees" with *Durovic.* The *Tucker* court observed that "*Durovic* places inordinate weight on the election the Commissioner made for the taxpayer in the deficiency notice," and that "*Durovic* is totally inconsistent with Revenue Ruling 72–539, 1972–2 C.B. 634, which is on point and clearly permits a joint return election under § 6013(a) where original separate returns were never filed, despite the fact that *more* than three years have passed since the filing due date of the original return." *Id.* at 582.

The deficiency notice issued to Morgan in this case makes no reference to an election by the Commissioner on behalf of the taxpayer that married taxpayer separate filing rates were being applied. Rather, it simply sets forth the deficiencies in income taxes for each of the years, plus additions.[3] The Tax Court below relied on a case involving very similar fact circumstances to those of the instant case in which the Commissioner's procedure and denial of the use of joint rates was approved. *See Thompson v. Commissioner,* 78 T.C. 558 (1982), which relied on *Durovic* and *Dritz v. Commissioner,* 427 F.2d 1176 (5th Cir.1970), *aff'g* 28 T.C.M. 874 (1969). Neither *Durovic* nor *Thompson* discuss or make reference to Revenue Ruling 72–539, 1972–2 C.B. 634,[4] referred to in *Tucker.*

One factor distinguishing *Tucker* from the present case is that the Internal Revenue agent calculating the income tax deficiency asserted against the Tuckers utilized *joint return* rates (as if the returns in question were based on a "married filing jointly" election). The ultimate decision, therefore (that the Tuckers, who had filed

---

3. The calculations are based on the higher, separate filing rates, rather than the joint return rates later claimed by Morgan after consultation with an attorney.

4. The pertinent part of Revenue Ruling 72–539, 1972–2 C.B. 634 sets out:

   **Rev.Rul. 72–539**

   Advice has been requested whether a joint return may be filed by a husband and wife after the period of limitation for electing to change from separate returns to a joint return has expired, if no returns have been filed for the year involved.

   . . . .

   This limitation in section 6013(b)(2) of the Code deals specifically with an election to file

a joint return after the filing of separate returns. The statute is silent concerning joint returns where no separate returns have been filed for the same taxable year. Therefore, even though the election to change from a separate return to a joint return is barred after the expiration of 3 years from the last date prescribed for filing a return, this does not preclude an election to file a joint return for the first time.

   Accordingly, it is held that in the instant case, the taxpayers may file a joint return even though the period of limitation for electing to change from separate returns to a joint return has expired, since no returns have been filed for the year in question.

no valid tax return for the years in question, were entitled to these favorable joint return rates rather than the less favorable rates for married but filing separately), was a factor in the Court of Claims' decision. The Commissioner in the present case made no such concession at any stage of the deficiency and tax determination process against Morgan.

Section 6013(b)(1)(C) precludes the claiming of a joint return election after the mailing of a deficiency *notice*, as was mailed to appellant Morgan. It applies when there has been an election by a married person to file separately. The deficiency notice in the present case set out the basis of the Commissioner's assessment and applies the rates that Morgan ineffectually sought to apply to the forms he originally filed. Although the forms did not constitute valid tax returns and were not effective to establish a binding election by Morgan, we consider it to be an equitable factor to be weighed together with the interpretation of section 6013. If a husband who has filed a return as a separate taxpayer, eschewing the joint return option available to him, is bound by the limitations of section 6013(b)(2), we see no reason why those same limitations should not apply to the husband who has *attempted* to file as a separate taxpayer, but was unsuccessful because of his concurrent failure to report adequately his income and deductions for the tax year in question.

While the Commissioner in this case did not file a separate return for Morgan utilizing the married taxpayer separate return rates as in *Durovic*, he did, in effect, take the same type of action by assessing an income tax deficiency notice. This action of the Commissioner in the instant case was different from the action taken in *Tucker*. We reach the same result reached in *Thompson* in which the Commissioner in the deficiency notice in the case of a similar "protest return" issued a notice of deficiency and "used the rates applicable in the case of married individuals filing separate returns to calculate the deficiencies...." *Thompson*, 78 T.C. at 560. We find *Glaze* to be distinguishable because *Glaze* involved no "protest return" and the taxpayer had not attempted to file a return as a married taxpayer originally. Under the circumstances here, although we concede the question to be a close one, we do not believe Revenue Ruling 72–539, 1972–2 C.B. 634 is controlling.

Accordingly, we AFFIRM the action of the Tax Court in denying Morgan the opportunity and advantage of a belated attempt to claim the benefit of joint return rates.

We AFFIRM the Tax Court, therefore, in all respects.